# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #026

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **3rd day of May, 2017**, are as follows:

**BY CRICHTON, J.**:

2016-CQ-1372    ERIC BORCIK v. CROSBY TUGS, L.L.C., (United States Court of Appeals for the Fifth Circuit)

We answer the certified question as set forth in this opinion. Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this Court upon the question certified shall be sent by the clerk of this Court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties. CERTIFIED QUESTION ANSWERED.

**SUPREME COURT OF LOUISIANA**

**No. 2016-CQ-1372**

**ERIC BORCIK**

**VERSUS**

**CROSBY TUGS, L.L.C.**

**ON CERTIFIED QUESTION FROM THE UNITED STATES
FIFTH CIRCUIT COURT OF APPEALS**

**CRICHTON, J.**

Invoking Louisiana Supreme Court Rule XII,[1] the United States Court of

Appeals for the Fifth Circuit certified to this Court the following question of law:

"What is the meaning of 'good faith' as that term is used in the Louisiana

Environmental Quality Act, Louisiana Revised Statutes 30:2027?" *Borcik v.*

*Crosby Tugs, L.L.C.*, 656 F. App'x 681, 685 (5th Cir. 2016). We accepted

certification[2] and, for the reasons set forth below, answer the question as follows:

The term "good faith," as used in R.S. 30:2027, means an employee is acting with

an honest belief that a violation of an environmental law, rule, or regulation

occurred.

**FACTS AND PROCEDURAL HISTORY**

We decide certified questions on the facts as presented to us by the Court of

Appeals. *See*, *e.g.*, *MCI Commc'ns Servs., Inc. v. Hagan*, 2011-1039, p.2 (La.

---

[1] Louisiana Supreme Court Rule XII provides, in relevant part:

> When it appears to . . . any circuit court of appeal of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Louisiana for rendition of a judgment or opinion concerning such questions or propositions of Louisiana law. This court may, in its discretion, decline to answer the questions certified to it.

[2] *Borcik v. Crosby Tugs, L.L.C.*, 2016-CQ-1372 (La. 11/7/16), --- So. 3d ---, 2016 WL 6777396.

10/25/11), 74 So. 3d 1148, 1149. Beginning in 2008, Eric Borcik was employed by Crosby Tugs, L.L.C. (Crosby) as a deckhand. In July 2010, he was transferred to the M/V NELDA FAYE. Borcik claims that the lead captain of the NELDA FAYE ordered him to dump waste oil into navigable waters and otherwise violate environmental laws over a period of three years. He further claims that he followed these orders.

In May 2013, Borcik emailed Crosby's Chief Administrative Officer (CAO). His email communicated that he had "concerns" that he stated "have all fallen on deaf ears" and expressed "fear [of] some form of retaliation." He later met with the CAO in person. According to the Court of Appeals, the parties and witnesses dispute what took place at this meeting—specifically, whether Borcik discussed his safety and environmental concerns with the CAO or whether he was "just complaining" while "vaguely mention[ing]" his concerns. After this meeting, Borcik was transferred to another boat and later fired. As noted by the Court of Appeals, "Borcik contends he was fired in retaliation for his complaints; Crosby contends that Borcik was fired for insubordination." 656 F. App'x at 682.

Borcik sued Crosby in October 2013, alleging retaliatory termination in violation of Louisiana Environmental Quality Act ("LEQA"), R.S. 30:2001, *et seq.* He specifically claimed that Crosby violated the Louisiana Environmental Whistleblower Act, R.S. 30:2027, which provides, in pertinent part:

> A. No . . . business . . . shall act in a retaliatory manner against an employee, ***acting in good faith***, who does any of the following:
>
> (1) Discloses, or threatens to disclose, to a supervisor or to a public body an activity, policy, practice of the employer . . . ***that the employee reasonably believes*** is in violation of an environmental law, rule, or regulation.

*Id.* (emphasis added). Borcik sought triple damages, including three years of lost wages, as well as damages for mental anguish and depression, humiliation and

embarrassment, loss of enjoyment of life, medical expenses, and attorney's fees and costs.

At trial in the federal district court, upon agreement of the parties and based on the elements of the whistleblower statute, the judge instructed the jury that, among the requirements of R.S. 30:2027, the statute requires that the "***employee acts in good faith***" and "reasonably believes this activity, policy, or practice of the boat captain is in violation of an environmental law." 656 F. App'x at 682-83 (emphasis by Court of Appeals). The dispute presented to this Court centers around the parties' disagreement about how "good faith" was defined by the federal district court in the jury instructions, and how "good faith" should be interpreted under R.S. 30:2027. Crosby proposed the definition: "Good faith means that Plaintiff had no intent to seek an unfair advantage or harm another party in making his report of an environmental violation." Borcik objected and proposed his own definition: "A finding of good faith means that the Plaintiff had an honest belief that an environmental violation occurred."

The federal district court adopted a jury instruction that incorporated language from both proposed definitions, instructing the jury: "'[G]ood faith' means that the plaintiff had an honest belief that an environmental violation occurred and that he did not report it either to seek an unfair advantage or to try to harm his employer or another employee." Borcik objected, arguing that this misstated Louisiana law by incorporating language regarding "unfair advantage" or "harm." The district court overruled Borcik's objection. In its closing argument, Crosby emphasized this definition of "good faith," arguing that Borcik "wanted to get [the Captain] in trouble" and that "if you conclude that's why he made this complaint, to get an unfair advantage, or to harm [the Captain] or anyone else, then you've got to dismiss this case." In rendering its verdict, the jury first found that

Borcik "reasonably believed the activity which he reported was in violation of an environmental law." The jury then found that Borcik did not "make his report in good faith." These findings resulted in a defense verdict, and the federal district court entered a judgment for Crosby.

Borcik appealed to the United States Court of Appeals for the Fifth Circuit. In a per curiam opinion, the Court of Appeals reviewed the existing law and jurisprudence, observing that the LEQA does not define "good faith" and finding only "limited guidance" elsewhere in the law. 656 F. App'x at 684. The Court of Appeals cited to the case *Overton v. Shell Oil Co.*, 05-1001 (La. App. 4 Cir. 7/19/06), 937 So. 2d 404, *writ denied*, 06-2093 (La. 11/3/06), 940 So. 2d 674, as the only Louisiana case addressing the "good faith" element, but noted that *Overton* did not actually adopt any specific definition of "good faith." 656 F. App'x at 683-84. In invoking the certification privilege granted by Louisiana Supreme Court Rule XII, the Court of Appeals stated that it was "not prepared to speculate about how the Louisiana Supreme Court would define 'good faith' as used in the whistleblower statute." *Id.*

## LAW AND ANALYSIS

Legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. *See, e.g., Dunn v. City of Kenner*, 15-1175, p.4 (La. 1/27/16), 187 So. 3d 404, 409-10. *See also* R.S. 24:177(B)(1) ("The text of a law is the best evidence of legislative intent."). When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, with no further interpretation made in search of the legislative intent. R.S. 1:4. The starting point for interpretation of any statute is the language of the statute itself. *See, e.g., Dunn*, 15-1175, p.4, 187 So. 3d at 410. When, on the other hand, a statute is not clear and

unambiguous, or its application leads to absurd consequences, we rely on secondary rules of statutory interpretation to discern the meaning of the statute at issue. *See Red Stick Studio Dev., L.L.C. v. State ex rel. Dep't of Econ. Dev.,* 10-0193, p. 10 (La. 1/19/11), 56 So. 3d 181, 187-88 (quotation omitted). In such cases, the statute "must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." *Id.*

With these fundamental principles in mind, we turn to the specific language at issue here, looking first to the language of the statute itself. As explained above, the whistleblower statute prohibits retaliation by an employer against an employee "***acting in good faith***" who "[d]iscloses, or threatens to disclose, to a supervisor or to a public body an activity, policy, practice of the employer . . . ***that the employee reasonably believes*** is in violation of an environmental law, rule, or regulation." R.S. 30:2027(A) (emphasis added). In other words, the LEQA sets forth both a subjective requirement—"good faith"—and an objective requirement—"reasonable belief." *See, e.g., State v. Guinn*, 319 So. 2d 407, 408-09 (La. 1975) (noting that "reasonable belief" is an objective standard).

We are called upon to interpret the meaning of "good faith" as used in R.S. 30:2027. The legislature has not defined "good faith" in the statute. And, as made clear by the conflicting views of the parties, the Court of Appeals' per curiam, and the Court of Appeals' certification of the question to this Court, it is apparent that the term "good faith" as used in this statute is not "clear and unambiguous." R.S. 1:4. We must therefore apply the secondary principles of statutory interpretation by looking to the purpose of the statute, the context of the term "good faith" within

the statute, and the text of the law as a whole. *Red Stick Studio*, 10-0193, p. 10, 56 So. 3d at 187-88.

Relevant to the statute at issue in this case, the Louisiana Constitution provides:

> The natural resources the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.

La. Const. art. IX, § 1. This Court previously recognized that the LEQA is a legislative response to this constitutional imperative. *Cheramie v. J. Wayne Plaisance, Inc.*, 595 So. 2d 619, 622 (La. 1992). In enacting the LEQA, the legislature declared that "[t]he maintenance of a healthful and safe environment for the people of Louisiana is a matter of ***critical state concern***." R.S. 30:2002(1) (emphasis added). Further, the legislature set forth the purpose of LEQA in the statute itself: "The maintenance of a healthful and safe environment in Louisiana requires governmental regulation and control over the areas of water quality, air quality, solid and hazardous waste, scenic rivers and streams, and radiation." R.S. 30:2003(A).

In order to promote these goals, the LEQA provides for "comprehensive policies on a statewide basis to unify, coordinate, and implement programs to provide for the most advantageous use of the resources of the state and to preserve, protect, and enhance the quality of the environment in Louisiana." R.S. 30:2003(B). More specifically, the whistleblower statute, R.S. 30:2027, furthers the constitutional directive and statutory purpose of the LEQA by protecting employees from retaliation or other adverse employment action for reporting

6

possible environmental violations. *See* Rick J. Norman, La. Prac. Series: La. Employ. Law § 7:132 (same).[3]

The employee in this case, Borcik, urges that this Court adopt a broad definition of "good faith," specifically proposing the definition: "A finding of good faith means that the Plaintiff had an honest belief that an environmental violation occurred." According to Borcik, this broad definition would encourage whistleblowing and promote the constitutional directive that the environment "shall be protected." In an *amicus curiae* brief supporting Borcik, the Louisiana Department of Environmental Quality (DEQ) agreed that a broad definition is necessary to uphold the purpose of the Act. On the other hand, the employer, Crosby, asks that the Court adopt a standard that requires the plaintiff to act without malice, harm, or otherwise seeking an unfair advantage (hereinafter referred to as the "absence of malice standard"). Crosby's definition looks beyond the employee's belief in the violation to the motivations of the employee in making the report. Crosby argues that this definition does not conflict with the statute's policy goals, but instead promotes those goals by shielding employees who act solely to protect the environment versus those who have the motivation to harm their employers. Crosby's proposed definition therefore includes a requirement related to the employee's motivation: "Good faith means that Plaintiff had no intent to seek an unfair advantage or harm another party in making his report of an environmental violation."

---

[3] State courts of appeal have made similar statements in examining the purpose of the LEQA whistleblower statute. *See Collins v. State ex rel. Dep't of Nat. Res.*, 12-1031 (La. App. 1 Cir. 5/30/13), 118 So. 3d 43 ("The purpose of the Louisiana Environmental Whistleblower Statute, La. R.S. 30:2027, is to protect employees from retaliatory action or other adverse employment action by employers for reporting possible environmental violations."); *Bear v. Pellerin Constr., Inc.*, 01-984 (La. App. 4 Cir. 1/30/02), 806 So. 2d 984 (same), *writ denied*, 02-0943 (La. 6/7/02), 818 So. 2d 777; *Chiro v. Harmony*, 99-0453 (La. App. 1 Cir. 11/5/99), 745 So. 2d 1198, 1200, *writ denied*, 99-3346 (La. 1/28/00), 753 So. 2d 840 (same).

We find that a broad definition of "good faith" is necessary to uphold the purpose of the LEQA and the Louisiana Constitution's mandate. This construction promotes the purpose of the LEQA and balances competing interests of the State and the environment, employers and industry, and employees, by encouraging reporting of environmental violations and protecting employers from potential whistleblowers who are not operating in good faith. It likewise comports with the text of the law as a whole, which we have previously held is broadly intended to protect the environment. We therefore hold that the term "good faith," as used in R.S. 30:2027, means an employee is acting with an honest belief that a violation of an environmental law, rule, or regulation occurred.

We have previously interpreted the LEQA whistleblower statute broadly. In *Cheramie v. J. Wayne Plaisance, Inc.*, 595 So. 2d 619 (La. 1992), this Court's sole decision interpreting the whistleblower provisions of the LEQA, the whistleblower was an instrument man working on a barrier island stabilization project. He complained to regulatory officials that his employer was damaging brown pelican nests and eggs in the course of the work. The employee was reluctant to return to the island, telling his crew chief that the work was illegal and asking for alternate work; the employer responded that he "had no choice, go or be fired." *Id.* at 621-22. After being fired, the employee sued under R.S. 30:2027. The trial court dismissed the suit, and the court of appeal affirmed, holding that wildlife protection was not the type of "environmental statute, ordinance, or regulation" contemplated by the whistleblower statute. *Id.* at 622.

This Court reversed the court of appeal, making two separate broad interpretations of the statute. Explaining the overarching statutory purpose, we found that the statute was not limited to protection of air and water, but could more broadly apply to provide for protection of endangered species of wildlife. *Id.* at

8

623. We also held that the employee's refusal to participate in illegal and environmentally damaging work could constitute "complaining" under R.S. 30:2027 and that he was entitled to damages under the Act. *Id.* at 624. The *Cheramie* holding therefore supports a broad interpretation of the whistleblower statute.[4]

A broad definition of "good faith" in R.S. 30:2027 is also supported by the definition of "good faith" in the whistleblower context in our neighboring state. In *Wichita County v. Hart*, 917 S.W. 2d 779 (Tex. 1996), the Texas Supreme Court analyzed the Texas Whistleblower Act. The court held that the term "good faith," as used in the act, means: "(1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Id.* at 784. The court explained that the first part of the definition "embodies the '***honesty in fact***'" standard, specifically that "employees seeking a remedy under the Whistleblower Act must have ***believed that they were reporting an actual violation of law***." *Id.* at 785 (emphasis added). The second part of the definition ensures that an employer only violates the whistleblower act if "a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law." *Id.*

The LEQA already contains this second part of the definition, because the Louisiana legislature chose to include the reasonable belief standard within the statute itself. In other words, as noted above, R.S. 30:2027 already has the objective belief standard incorporated within the plain language. "Good faith" must therefore mean something different than an objective "reasonable belief," because the term would otherwise be duplicative and unnecessary, and we interpret statutes

---

[4] We agree with the Court of Appeals that *Overton v. Shell Oil Co.*, 05-1001 (La. App. 4 Cir. 7/19/06), 937 So. 2d 404, *writ denied*, 06-2093 (La. 11/3/06), 940 So. 2d 674, does not provide a generalized definition of "good faith" under Louisiana law and is limited to its facts.

to avoid unnecessary verbiage. *See*, *e.g.*, *Guillory v. Pelican Real Estate, Inc.*, 14-1539, p.3 (La. 3/17/15), 165 So. 3d 875, 877 ("It is presumed that every word, sentence, or provision in a law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were employed."). Consequently, the definition of "good faith" under R.S. 30:2027 we set forth here encompasses only the "honesty" standard outlined in Texas's two-part standard.[5]

The standard proposed by Crosby—the absence of malice standard—would lead to absurd consequences in this context given the statute's goal of protecting environmental whistleblowers and the Act's broader goal of protecting the environment.[6] For instance, an employee who likes his employer and an employee who does not like his employer would be treated differently for reporting an *identical violation*. Only an employee who honestly and reasonably believes a violation occurred and does not harbor "ill will," malice, or intent to harm his employer would be protected.[7] Crosby's definition therefore effectively adds an element to the statute that would lead to an examination of the employee's motives rather than of the employer's actions. Additionally, employees required to have no

---

[5] Other whistleblower statutes have similar structures. For example, numerous federal appellate courts have remarked that the whistleblower provisions of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, which were "intended to include all good faith and reasonable reporting of fraud," rely on establishing that the complainant has both a "subjective belief that the complained-of conduct constitutes a violation of relevant law, and also that the belief is objectively reasonable in light of the factual circumstances." *Rhineheimer v. U.S. Bancorp Investments, Inc.*, 787 F.3d 797, 810-11 (6th Cir. 2015) (internal quotations omitted). *See also*, *e.g.*, *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1000 (9th Cir. 2009) ("The plain language of this section, as well as the statute's legislative history and case law interpreting it, suggest that to trigger the protections of the Act, an employee must also have (1) a subjective belief that the conduct being reported violated a listed law, and (2) this belief must be objectively reasonable.").

[6] The parties disagree as to whether the standard that Crosby proposes, *i.e.*, an exclusion from the statute's protections where the employee seeks an "unfair advantage" or "intends to harm" his employer, is equivalent to a situation where the employee exhibits "ill will" or "malice" towards the employer. Because we decline to include any such element in the definition of "good faith," this dispute is not relevant to our holding.

[7] We recognize that whistleblowers may often have mixed motives in reporting violations. Crosby's standard would mean a whistleblower is unprotected under the statute even with mixed motives.

malice or intent to harm would fall outside of the ambit of the Act's protections, leading them to fear retaliation from reporting and resulting in a chilling effect on reporting violations—exactly the problem the whistleblower statute was designed to ameliorate. Indeed, as the state points out in its *amicus* brief, Crosby's proposed definition would make it burdensome for an employee to *ever* make out a *prima facie* case under the statute. This is because harm to an employer would result from nearly every conceivable instance of reporting, and an employee would therefore be seen as having an "intent to harm" in every case. We agree with the state that the statute should not be construed to contravene its purpose or to provide a disincentive for reporting violations. *See*, *e.g.*, *Wichita*, 917 S.W. 2d at 785-86 ("The fact that an employee harbors malice toward an individual should not negate the Whistleblower Act's protection if the employee's report of a violation of law was honestly believed and objectively reasonable given the employee's training and experience.").

In closing, we note that this definition protects employers and does not, as Crosby contends, protect an employee who a factfinder determines fabricates the existence of an environmental violation in order to spite his or her employer. Nor does it in any way condone pollution or other prohibited environmental activities carried out solely by the employee claiming protection of the whistleblower statute. The LEQA ensures this in two ways. As an initial matter, R.S. 30:2027(C) expressly provides that the whistleblower protections "shall have no application to any employee who, acting *without direction from his employer* . . ., deliberately violates any provision of this Subtitle. . . ." (emphasis added). *See also* Norman, *supra*, La. Employ. Law § 7:132 (same). This protects employers from self-motivated individual polluters.

11

Further, as explained above, R.S. 30:2027(A)(1) contains an objective reasonableness standard for a whistleblower to receive the protection of the Act. If a jury finds that a plaintiff did not "reasonably believe" that an "activity, policy, [or] practice *of the employer*" is a violation of an environmental law, rule, or regulation, the employee cannot receive the benefits of the act—irrespective of whether the report was made in accordance with the "good faith" standard. The definition of "good faith" set forth herein also requires that the employee act with an "honest belief that a violation of an environmental law, rule, or regulation occurred." These provisions of R.S. 30:2027(A)(1) therefore serve as additional safeguards against fabricated claims, because an employee is not protected unless the belief in the environmental violation directed by the employer is honest and reasonable.

## DECREE

We answer the certified question as set forth in this opinion. Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this Court upon the question certified shall be sent by the clerk of this Court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties.

**CERTIFIED QUESTION ANSWERED.**