# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 6, 2023

Lyle W. Cayce
Clerk

No. 22-30178

Kirk Menard,

*Plaintiff—Appellee*,

*versus*

Targa Resources, L.L.C.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:19-CV-50

Before King, Stewart, and Haynes, *Circuit Judges*.

Per Curiam:

This case concerns the proper interpretation of certain provisions of the Louisiana Environmental Whistleblower Statute ("LEWS"). Kirk Menard alleges Targa violated the Statute by discharging him after he refused and reported a manager's directive to dilute sewage samples. The district court denied Targa's motion for summary judgment and, following a bench trial, rendered judgment for Menard. Targa argues on appeal that Menard's report of the manager's directive and refusal to comply do not constitute "protected activities" under LEWS. Because we lack clear guidance from the Louisiana Supreme Court on how to resolve these issues, and the

No. 22-30178

outcome is determinative of the entire appeal, we respectfully CERTIFY questions to the Louisiana Supreme Court.

> CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF LOUISIANA, PURSUANT TO RULE XII, LOUISIANA SUPREME COURT RULES.
>
> TO THE SUPREME COURT OF LOUISIANA AND THE HONORABLE JUSTICES THEREOF:

## I.    Style of the Case

The style of the case in which this certification is made is *Menard v. Targa Resources, L.L.C.*, No. 22-30178, in the United States Court of Appeals for the Fifth Circuit.  The case is on appeal from the United States District Court for the Middle District of Louisiana.  Federal jurisdiction is based on the parties' diversity of citizenship.

## II.    Background

This suit implicates a provision of LEWS which prohibits businesses from retaliating "against an employee, acting in good faith, who . . . [d]iscloses" an employer's practice that he "reasonably believes" violates an environmental law or regulation.  LA. STAT. ANN. § 30:2027(A)(1).  In June 2018, Kirk Menard began working as an environmental, safety, and health specialist at Targa's Venice, Louisiana plant.  His job duties included ensuring Targa complied with various state and federal environmental and safety standards.  Menard reported to two individuals—his "official supervisor," who resided at another facility, and an "indirect supervisor," who served as an area manager for the Venice

2

plant. Menard's indirect supervisor, in turn, reported to Perry Berthelot, a Targa District Manager.

On an October 5 conference call—which included Berthelot—Menard reported that the total suspended solids in certain recent water samples exceeded regulatory limits. At the end of the call, Berthelot told Menard to call him back to discuss the plan for rectifying these exceedances. Menard obliged, and he alleges that Berthelot told him he should dilute the sewage samples with bottled water. Menard claims that in response he nervously laughed and said, "no, we're going to correct it the right way."

Menard subsequently reported Berthelot's request to Menard's official supervisor, who responded, "no we're not going to do that, because that will not correct the problem." Six days later Menard was terminated by Targa for supposed work performance issues. Shortly thereafter, Menard filed this suit alleging that Targa violated LEWS by discharging him for (1) refusing to comply with Berthelot's request to dilute certain sewage samples with bottled water to ensure they met certain environmental regulatory standards, and (2) reporting the request to his supervisor.

Targa removed the case and moved for summary judgment, urging that Menard couldn't establish his prima facie case for retaliation because (1) he did not engage in a protected activity under LEWS, and (2) the evidence showed he was legitimately fired for inappropriate conduct. The district court denied Targa's motion. The court agreed with Targa that LEWS did not apply to Menard's report because reporting environmental violations was "part of [Menard's] normal job responsibilities." However, the court reasoned that under *Cheramie v. J. Wayne Plaisance, Inc.*, 595 So. 2d 619, 624 (La. 1992), LEWS applied to Menard's refusal to dilute the

samples.[1]   The case proceeded to a bench trial, and the district court subsequently ruled for Menard "in all respects" and awarded him damages and attorney's fees.  Targa timely appealed.

### III.   Discussion

The threshold issue in this case—whether Menard engaged in a "protected activity" under LEWS—turns on two questions: (1) whether "refusals" to engage in an illegal activity constitute "disclosures" under the current version of the Statute, and (2) whether LEWS applies to reports made as part of an employee's normal job duties.[2]  Given that these questions implicate important, unsettled issues of Louisiana state law, we believe that certification to the Louisiana Supreme Court is appropriate.

We consult the following factors when deciding whether to certify a question to a state supreme court: (1) "the closeness of the question[s]"; (2) federal–state comity;  and  (3) "practical limitations,"  such as the possibility of delay or difficulty of framing the issue.  *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 522 (5th Cir. 2015) (quotation omitted).[3]

At the outset, we conclude that the second and third *Swindol* factors clearly support certification.  First, "considerations of comity" are at an apex

---

[1] The court also concluded that Menard had submitted sufficient evidence of a causal connection between his protected activity and his termination to survive summary judgment.

[2] If the answer to both questions is "no," then Targa is entitled to summary judgment, and we need not reach the causation issue.

[3] Menard requested certification of the relevant questions in his opening brief. Louisiana Supreme Court Rule XII, section 2 authorizes such certification.  *See also In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2010), *certified question accepted sub nom. In re Katrina Canal Breaches Litig.*, 51 So. 3d 1 (La. 2010), *and certified question answered*, 63 So. 3d 955 (La. 2011); *Kelly v. State Farm Fire & Cas. Co.*, 582 F. App'x 290, 293 (5th Cir. 2014) (per curiam) (unpublished).

here. LEWS is part of the Louisiana Environmental Quality Act, a regulatory scheme aimed at "protect[ing], conserv[ing], and replenish[ing]" the "natural resources" and "quality of the environment" in Louisiana. *See Borcik v. Crosby Tugs, L.L.C.*, 222 So. 3d 672, 676 (La. 2017) (quoting LA. CONST. art. IX, § 1). In enacting LEWS, the Louisiana legislature emphasized that environmental conservation "is a matter of *critical state concern*"—in fact, it's a constitutional directive.[4] *Id.* (quoting LA. STAT. ANN. § 30:2002(1)) (alteration omitted). Additionally, there are few practical barriers to certification. Both issues are straightforward and purely legal, and at oral argument the parties agreed that their resolution is not particularly time sensitive.

Additionally, based on our review of the case law, no controlling precedent answers either question, and the issues are quite "close[]." *Swindol*, 805 F.3d at 522 (quotation omitted). As to the first question, *Cheramie* squarely holds that LEWS covers refusals to engage in illegal activity. *See* 595 So. 2d at 624. But *Cheramie* addressed a pre-1991 version of LEWS that prohibited employers from retaliating against "an employee, acting in good faith, who *reports* or *complains* about possible environmental violations." *See* LA. STAT. ANN. § 30:2027 (prior to its 1991 amendment) (emphasis added). The current version of the statute, however, protects an employee who "*[d]iscloses, or threatens to disclose*, to a supervisor . . . [a] practice of the employer . . . that the employee reasonably believes is in

---

[4] Specifically, the Louisiana Constitution provides:

The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.

LA. CONST. art. IX, § 1.

violation of an environmental law, rule, or regulation." LA. STAT. ANN. § 30:2027(A)(1) (emphasis added). It's thus unclear whether *Cheramie*'s holding survives the statutory amendment.

Menard emphasizes that in the thirty-year period since LEWS's amendment, the Louisiana Supreme Court has never expressly overruled *Cheramie*—in fact, it has cited it favorably when interpreting other (unamended) provisions of LEWS. *See, e.g.*, *Borcik*, 222 So. 3d at 677 (addressing LEWS's good-faith requirement, which is identical in the pre- and post-1991 versions of the statute). Yet, it is difficult to see how *Cheramie*'s holding can be reconciled with the current version of the Statute, particularly given its reliance on now-amended language. The *Cheramie* court reasoned that a "[r]efusal to participate in illegal and environmentally damaging work is an *extreme form of complaint*, and constitutes '*complaining*' under [LEWS]." 595 So. 2d at 624 (emphasis added). But while a refusal may be a "complaint," it's not clear how it can be a "disclos[ure]." LA. STAT. ANN. § 30:2027(A)(1).

We are thus left with an unclear issue of state law. If we apply *Cheramie*'s holding here, we must disregard the amended statute's ordinary meaning, potentially treading on the state legislature's toes. On the other hand, ignoring *Cheramie* requires us to conclude that it is dead precedent— at least on this point. While not every such situation justifies certification, this one—which implicates such important state interests—clearly does.

Our determination of the second question is also worthy of certification. As discussed, the district court held that LEWS does not protect Menard's report to his own supervisor because reporting was "part of his normal job responsibilities." The Louisiana Supreme Court has never recognized such a "job-duties exception," and LEWS's text doesn't mention one. Nonetheless, lower state court precedent suggests the

existence of the exception is, at the very least, unsettled. Two state courts have explicitly embraced the exclusion. *See Stone v. Entergy Servs., Inc.*, 9 So. 3d 193, 200 (La. Ct. App. 2009) (holding that LEWS "does not afford protection to an employee who generates reports regarding environmental issues when reporting [such issues] . . . is a part of one's normal job responsibilities"); *Matthews v. Mil. Dep't ex rel. State*, 970 So. 2d 1089, 1090 (La. Ct. App. 2007) (same). Yet, the same Louisiana circuit court deciding the latter case seemed to recently reverse course in *Derbonne v. State Police Commission*, 314 So. 3d 861 (La. Ct. App. 2020), rejecting the exclusion as atextual and contrary to the purpose of whistleblower statutes. *See id.* at 870–73.

Targa stresses that *Derbonne* is irrelevant because it addressed the Louisiana Whistleblower Act, a slightly different state whistleblower statute. *See id.* at 870–73. That's true—but the *Derbonne* court didn't indicate that its analysis was limited only to LEWS. To the contrary, the court explicitly criticized the reasoning and lack of authority undergirding *Stone* and *Matthews*, emphasizing that *Matthews* relied on a Sixth Circuit case interpreting inapposite federal whistleblower statutes, *id.* at 871 n.3, and *Stone* referenced no authority at all, *id.* at 871.

This indeterminacy is furthered by the fact that other state courts grappling with the same issue have reached contrary conclusions. *See, e.g.*, *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 186 (Tex. 2022) (rejecting the existence of a job-duties exclusion in the Texas Whistleblower Act). *But see Kidwell v. Sybaritic, Inc.*, 784 N.W.2d 220, 228 (Minn. 2010) (holding that an "employee cannot be said to have 'blown the whistle'" under Minnesota's whistleblower statute "when the employee's report is made because it is the employee's job to investigate and report wrongdoing"). These fractured opinions also reveal the competing policy implications at stake: On the one hand, adopting a job-duties exclusion may undermine protections for the

No. 22-30178

employees who are best-positioned to report misconduct but most vulnerable to retaliation. *See Pridgen*, 653 S.W.3d at 186; *Kidwell*, 784 N.W.2d at 237 (Anderson, J., dissenting). On the other hand, rejecting the exclusion risks insulating a massive class of employees from discipline. *See Pridgen*, 653 S.W.3d at 189 (Blacklock, J., concurring). Accordingly, we are left with a split of authority and no clear way to resolve it. Therefore, we believe certification of this second question is also appropriate.

In sum, resolution of this appeal turns on contested, unsettled issues of Louisiana state law that implicate matters of "critical concern" to the state. We therefore conclude that certification of these questions is warranted.

## IV.    Questions Certified

We respectfully request that the Louisiana Supreme Court address and answer the following questions:

> (1) Whether refusals to engage in illegal or environmentally damaging activities are "disclosures" under the current version of the Louisiana Environmental Whistleblower Statute, LA. STAT. ANN. 30:2027; and

> (2) Whether the Louisiana Environmental Whistleblower Statute affords protection to an employee who reports to his supervisor an activity, policy, or practice of an employer which he reasonably believes is in violation of an environmental law, rule, or regulation, where reporting violations of environmental law, rules, or regulations, is a part of the employee's normal job responsibilities.

## V.    Conclusion

We disclaim any intent that the Louisiana Supreme Court confine its reply to the precise form or scope of the questions certified. More generally, if the Louisiana Supreme Court determines a more effective expression of

No. 22-30178

the meaning of LEWS than answering the precise questions we have asked, we defer to the court to take that course. We transfer to the Louisiana Supreme Court the record and appellate briefs in this case with our certification. We retain this appeal pending the Louisiana Supreme Court's response.

QUESTIONS CERTIFIED TO THE SUPREME COURT OF LOUISIANA.

**A True Copy**
**Certified Jan 06, 2023**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**