# Supreme Court of Louisiana

The Opinions handed down on the **21st day of March, 2025** are as follows:

**BY Crain, J.:**

2024-CC-00899    KATHLEEN WELCH AND CARROLL DEWAYNE WELCH VS. UNITED MEDICAL HEALTHWEST-NEW ORLEANS L.L.C. AND UNITED MEDICAL HEALTHCARE INC. (Parish of Jefferson)

AFFIRMED. SEE OPINION.

Justice Jeanette Theriot Knoll, retired, heard this case as Justice Pro Tempore, sitting in the vacant seat for District 3 of the Louisiana Supreme Court. She is now appearing as Justice ad hoc for Justice Cade R. Cole.

Hughes, J., dissents for reasons assigned by Griffin, J. and Knoll, J. and assigns additional reasons.

McCallum, J., concurs in the result.

Griffin, J., dissents and assigns reasons.

Knoll, J., dissents and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2024-CC-00899

## KATHLEEN WELCH AND CARROLL DEWAYNE WELCH

## VS.

## UNITED MEDICAL HEALTHWEST-NEW ORLEANS L.L.C. AND UNITED MEDICAL HEALTHCARE INC.

On Supervisory Writ to the 24th Judicial District Court, Parish of Jefferson

**CRAIN, J.**[*]

In this medical malpractice action, we address the constitutionality of La. R.S. 29:771(B)(2)(c)(i) which provides a gross negligence standard for civil liability of health care providers during a declared public health emergency. Finding the statute rationally related to a legitimate government interest, it is constitutional.

## FACTS AND PROCEDURAL HISTORY

In November 2019, Kathleen Welch was admitted to Tulane Medical Center for acute pancreatitis and diabetic ketoacidosis. After an extended stay, she was discharged and admitted to BridgePoint Healthcare LA, LLC d/b/a BridgePoint Continuing Care Hospital for rehabilitation. While at BridgePoint, Welch developed pressure ulcers. Following her discharge from BridgePoint, Welch was admitted to United Medical Physical Rehabilitation Hospital where she continued to suffer pressure ulcers. She was ultimately discharged home on May 6, 2020.

Welch filed a claim for injuries related to her pressure ulcers. She requested a medical review panel pursuant to La. R.S. 40:1231.1, *et seq*, naming BridgePoint and United Medical as defendants. Because United Medical was not a qualified

---

[*] Justice Jeannette Theriot Knoll, retired, heard this case as Justice Pro Tempore, sitting in the vacant seat for District 3 of the Louisiana Supreme Court. She is now appearing as Justice ad hoc for Justice Cade R. Cole.

healthcare provider under La. R.S. 40:1231.8, Welch filed a lawsuit against United Medical. She alleged that United Medical's negligence caused pressure wounds on her back and sacrum.

United Medical filed an exception of no cause of action, arguing the application of La. R.S. 29:771(B)(2)(c)(i), which is part of the Louisiana Health Emergency Powers Act (LHEPA), La. R.S. 29:760, *et seq*. That provision states:

> During a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct.

On March 11, 2020, Governor John Bel Edwards declared a public health emergency in connection with the COVID-19 pandemic. Because Welch's treatment was during the declared public health emergency, United Medical argued its alleged liability is subject to a gross negligence or willful misconduct standard. Welch's petition alleged only ordinary negligence, thus, United Medical moved for dismissal. Welch filed an opposition to the peremptory exception of no cause of action in which she made several arguments, including that the statute is unconstitutional.

The trial court granted the exception, requiring application of the gross negligence standard, but made no ruling on the provision's constitutionality. Welch appealed.

The appellate court found United Medical alleged ordinary negligence during a declared public health emergency, not gross negligence, thus, the trial court correctly applied La. R.S. 29:771(B)(2)(c)(i). Because the attorney general was not notified, the appellate court found the constitutionality of La. R.S. 29:771(B)(2)(c)(i) was not properly before it. The matter was remanded to allow a challenge and ruling on constitutionality. *Welch v. United Med. Healthwest-New Orleans, LLC*, 21-684 (La. App. 5 Cir. 8/24/22), 348 So.3d 216.

2

On remand, Welch amended her petition to allege that La. R.S. 29:771(B)(2)(c)(i) is unconstitutional, and the attorney general was served. United Medical filed exceptions of *res judicata* and no cause of action, arguing the appellate court's ruling defeated Welch's demand on the merits, thus defeating her standing to challenge the statute's constitutionality. Welch opposed the exceptions pointing out that the constitutional claim was specifically reserved and remanded for further proceedings on that issue.

In addition to amending her petition, Welch filed a motion to declare La. R.S. 29:771(B)(2)(c)(i) unconstitutional. In her memorandum in support, Welch argued the gross negligence provision is unconstitutional because it violates the due process and adequate remedy provisions of the Louisiana Constitution. She also argued the provision is overbroad and leads to absurd consequences, and that it is a prohibited special law. The attorney general filed a memorandum supporting the provision's validity.

The trial court found La. R.S. 29:771(B)(2)(c)(i) constitutional, thus, pretermitting the remaining exceptions. Welch filed a writ application seeking supervisory review of the denial of her motion to declare the statute unconstitutional. The appellate court upheld the constitutionality of La. R.S. 29:771(B)(2)(c)(i), because it rationally relates to a legitimate state purpose of providing healthcare during a public health emergency. Considering the profound impact of COVID-19, it found application of the statute did not lead to absurd consequences. Finally, it determined La. R.S. 29:771(B)(2)(c)(i) is not a prohibited special law because it applies to all healthcare providers equally. For these reasons, the writ application was denied.

We granted Welch's writ application. *Welch v. United Medical Healthwest-New Orleans LLC*, 24-0899 (La. 11/14/24), 395 So.3d 1164.

3

# DISCUSSION

United Medical challenges Welch's standing to seek constitutional review of La. R.S. 29:771(B)(2)(c)(i). United Medical argued initially that Welch's petition failed to state a cause of action because La. R.S. 29:771(B)(2)(c)(i) requires gross negligence or willful misconduct and the petition alleged only ordinary negligence. Although Welch asserted that the statute is unconstitutional, the trial court granted the exception of no cause of action and made no ruling on the constitutional issue. The Fifth Circuit affirmed the ruling on the exception, then remanded for determination of the constitutional issue. The right to challenge the validity of the statute was expressly reserved.

We find the constitutional question properly before us. By challenging the constitutionality of La. R.S. 29:771(B)(2)(c)(i), plaintiff essentially asserts her claim is governed by the ordinary negligence standards set forth in Louisiana Revised Statute 9:2794, not LHEPA. We must determine if the gross negligence standard of LHEPA applies before plaintiff's pleadings can be scrutinized for a cause of action. Welch has standing to assert the constitutional challenge.

The constitutionality of a statute presents a question of law subject to *de novo* review. *State v. Spell*, 21-0876 (La. 5/13/22), 339 So.3d 1125, 1130; *State v. Webb*, 13-1681 (La. 5/7/14), 144 So.3d 971, 975. Generally, statutes are presumed constitutional, and the party challenging the validity of the statute bears the burden of proving it is unconstitutional. *Spell*, 339 So.3d at 1130. Unless either fundamental rights or privileges and immunities of a person are affected, a strong presumption exists that the legislature has acted within its constitutional authority in adopting legislation. *Polk v. Edwards*, 626 So.2d 1128, 1132 (La. 1993). This presumption is especially forceful with statutes enacted to promote a public purpose. *Id*.

4

The legislature can enact any law that the state constitution does not explicitly prohibit. *Id.* Contrast the federal government, which has only those powers expressly granted by the United States Constitution. *Id.*; U.S. Const. amend. X. Stated differently, the legislature has all powers not expressly denied it by the state or federal constitutions. *Polk*, 626 So.2d at 1132; *In re American Waste & Pollution Control Co.*, 588 So. 2d 367, 373 (La. 1991). Thus, a party challenging the constitutionality of a statute must point to a particular provision of the constitution that would restrict the legislature's power to enact that statute. *Moore v. RLCC Technologies, Inc.*, 95-2621 (La. 2/28/96), 668 So.2d 1135, 1140. Doubt as to legislation's constitutionality is resolved in favor of its constitutionality. *Polk*, 626 So.2d at 1132.

*Access to Courts*

Welch argues La. R.S. 29:771(B)(2)(c)(i) violates Article I, § 22 of the Louisiana Constitution, which restricts legislative power by guaranteeing that:

> All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.

This constitutional guarantee provides greater protection to fundamental interests. *Everett v. Goldman*, 359 So.2d 1256, 1268 (La. 1978). Where access to judicial processes is not essential to exercising a fundamental constitutional right, the legislature can restrict or allocate such access, so long as the restriction or allocation is not totally arbitrary. *Bazley v. Tortorich*, 397 So.2d 475, 485 (La. 1981). Thus, when a claimant asserts a right other than a fundamental right, access to the courts can be restricted if there is a rational basis for the restriction. *Everett*, 359 So.2d at 1268.

The right of malpractice victims to sue for damages is not a fundamental constitutional right. *Everett*, 359 So.2d at 1268; *Butler v. Flint Goodrich Hosp. of*

5

*Dillard University*, 607 So.2d 517, 518 (La. 1992); *Oliver v. Magnolia Clinic*, 11-2132 (La. 3/13/12), 85 So.3d 39, 44. Therefore, that right can be restricted if there is a rational basis for the restriction. Because La. R.S. 29:771(B)(2)(c)(i) restricts the rights of malpractice victims by requiring proof of gross negligence rather than ordinary negligence, we consider whether a rational basis exists for the restriction.

La. R.S. 29:771(B)(2)(c)(i) is part of LHEPA. LHEPA was enacted in 2003 to allow the state to "do all that is reasonable and necessary to protect the health and safety of its citizens" considering the potential for "new and emerging dangers, including emergent and resurgent infectious diseases." La. R.S. 29:761(A). LHEPA recognizes that emergency health threats "may require the exercise of extraordinary government powers and functions" and "the state must have the ability to respond, rapidly and effectively, to potential or actual public health emergencies." *Id.* Thus, LHEPA was enacted to protect human life and control the spread of human disease. La. R.S. 29:761(A)(2)(a-b). It was also enacted to ensure the government's ability to meet the people's "immediate emergency needs" and to protect the availability of services essential to "health, safety, and welfare" during an emergency. La. R.S. 29:761(A)(2)(c-d). When faced with "new and emerging dangers, including emergent and resurgent infectious diseases and incidents of civilian mass casualties" the government must be able to respond. La R.S. 29:761(A). Part of that response is ensuring access to medical care. That is a legitimate state interest addressed by LHEPA.

We next consider whether the challenged provision is rationally related to ensuring access to healthcare during a public health emergency. There was a great need for medical care in response to COVID-19. As COVID-19 infections surged in wave-like patterns, relieving pressure on an overburdened health care system was critical to maintaining a functioning healthcare system. COVID-19 restrictions attempted to lower the number of infected individuals at a given time by reducing

6

the spread of the virus. Restrictions included executive orders limiting gatherings and encouraging people to stay home. *E.g.*, State of La., Exec. Dept., Proclamation No. 209 JBE 2020, *COVID-19 Public Health Emergency Phase 2 of Resilient Louisiana* (December 22, 2020).

The rational desire was that healthcare workers show up to provide care in difficult and potentially life-threatening circumstances, despite the rest of the world being encouraged to stay home. By continuing to work, healthcare workers exposed themselves and their families to risks of an unknown virus. Should an act of alleged malpractice occur under those unprecedented circumstances, healthcare workers also risked potential liability. La. R.S. 29:771(B)(2)(c)(i) attempted to alleviate pressure on an overburdened healthcare system by limiting healthcare workers' liability exposure to gross negligence or willful misconduct. Because of the extraordinary circumstances, healthcare workers were relieved of ordinary negligence. That policy decision encouraged healthcare workers to work through the emergency, which supported people's access to medical services. Thus, the provision is rationally related to the state's interest in ensuring access to medical care during a health emergency.

It has been argued that the statute should be applied only to COVID-19 related healthcare. However, LHEPA is drawn to cover all public health emergencies, not just COVID-19. Its aim is to ensure people's access to essential services throughout the emergency, including medical care. La. R.S. 29:761(A)(2)(c-d). For example, if a person during a public health emergency is critically injured in a car accident, that person needs access to care. Healthcare workers are needed to work through the emergency for the system to remain open and functional for all patients. Here, Welch's claim relates to healthcare, regardless of whether it is COVID-related. LHEPA's liability provision rationally relates to its goal of protecting the availability

7

of medical services during an emergency. This remains true, even if the medical services rendered did not relate to COVID-19.

La. Const. art. I, § 22 was not intended to limit the legislature's ability to restrict causes of action or to bar the legislature from creating areas of statutory immunity from suit. *Crier v. Whitecloud*, 496 So.2d 305, 309-310 (La. 1986). Rather, the access to courts clause ensures the judicial system is open for whatever remedies are fashioned by the legislature. *Progressive Sec. Ins. Co. v. Foster*, 97-2985 (La. 4/23/98), 711 So.2d 675, 690. We find La. R.S. 29:771(B)(2)(c)(i) does not violate La. Const. art. I, § 22.

*Due Process*

Welch argues La. R.S. 29:771(B)(2)(c)(i) unconstitutionally divests her of a vested property right to sue for damages, thus, violating due process. According to Louisiana Constitution Article I, § 2: "No person shall be deprived of life, liberty, or property, except by due process of law." The Fourteenth Amendment of the U.S. Constitution provides similarly.

Welch was treated by United Medical from April 16, 2020 to May 6, 2020. LHEPA was enacted in 2003. The subject public health emergency was declared on March 11, 2020. Therefore, Welch's alleged injuries by United Medical occurred after both the gross negligence standard was enacted into law and the subject public health emergency was declared. When Welch acquired the right to sue United Medical for her injuries, LHEPA already provided for the gross negligence standard, and its application had already been triggered by the public health emergency declaration. Neither the statute nor the declaration deprived her of any previously vested property right.

Additionally, no right is absolutely protected, otherwise there would be no need for the phrase "except by due process of law." *Bienvenue v. Defendant 1*, 23-1194 (La. 6/12/24), 386 So.3d 289, 290 (on rehearing). Rather, this constitutional

8

guarantee protects against arbitrary and unreasonable actions. *Id.; Progressive Security Insurance Co.*, 711 So.2d at 688; *Babineaux v. Judiciary Comm'n*, 341 So.2d 396, 400 (La. 1975). Where only social or economic regulations are involved, restriction of a right need only bear a rational relationship to a legitimate government interest to survive due process scrutiny. *Bienvenue*, 386 So.3d at 290; *Med Express Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359, 365.

Welch's right to sue for damages for medical malpractice involves an economic interest and does not implicate a fundamental right. *Everett*, 359 So.2d at 1268; *Butler*, 607 So.2d at 518; *Oliver*, 85 So.3d at 44. The due process test is whether the legislation bears a reasonable relation to the goal to be attained, and whether it is adopted in the interest of the community as a whole. *Bazley*, 397 So.2d at 483; *Everett*, 359 So.2d at 1268; *Bienvenue*, 386 So.3d at 291. As previously stated, La. R.S. 29:771(B)(2)(c)(i) is rationally related to a legitimate government interest. Its purpose is to ensure the availability of essential medical services. Restricting civil liability to gross negligence reasonably promotes that government aim. The liability provision is not arbitrary and has a rational relationship to public safety and welfare. *Bienvenue*, 386 So.3d at 292; *Francis v. Morial*, 455 So.2d 1168, 1172-73 (La. 1984). The challenged provision does not violate due process.

*Special Law*

Welch also argues that La. R.S. 29:771(B)(2)(c)(i) violates the constitutional prohibition against special laws. Louisiana Constitution Article 3, § 12(A)(7) restricts legislative power by providing:

> Except as otherwise provided in this constitution, the legislature shall not pass a local or special law . . . granting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity.

9

A special law confers special privileges or imposes peculiar disabilities or burdensome conditions on the exercise of a right common to a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. *Kimball v. Allstate Ins. Co.*, 97-2885 (La. 4/14/98), 712 So.2d 46, 52; *Deer Enterprises, LLC v. Parish Counsil of Washington Parish*, 10-0671 (La. 1/19/11), 56 So.3d 936, 943-44. A general law operates equally and uniformly upon all of a designated class that has been founded upon a reasonable classification. *Kimball*, 712 So.2d at 52. In other words, a law is special if it affects only a certain number of persons within a legitimate class of persons. *Deer Enterprises*, 56 So.3d at 944; *Teachers' Retirement System of Louisiana v. Vial*, 317 So.2d 179, 183 (La. 1975).

The prohibition on special laws prevents abuse of legislative power exercised for a special interest and prohibits exempting specific individuals or private corporations from the operation of a general law. *Polk*, 626 So.2d at 1135. The prohibition safeguards against the abuse of legislative power for special interests. *Deer Enterprises*, 56 So.3d at 944; *Teachers' Retirement System of Louisiana*, 317 So.2d at 183.

LHEPA is not a special interest law. It is public welfare legislation enacted to protect the health and safety of all Louisiana citizens during an emergency, and La. R.S. 29:771(B)(2)(c)(i) ensures the availability of healthcare by limiting healthcare workers' liability. The challenged provision applies to all healthcare providers, not just a special few. "Healthcare providers" is a legitimate class of persons. A law is special if it affects only specific persons within that class, not all persons in the class. *Deer Enterprises*, 56 So.3d at 944; *Teachers' Retirement System of Louisiana*, 317 So.2d at 183. The subject law applies to all persons who are healthcare providers. It does not violate the prohibition of special laws.

*Overbroad*

Welch argues the statute is unconstitutional because it is overbroad and leads to absurd consequences. The overbreadth doctrine is unique to the First Amendment, in particular free speech. *Cartesian Company, Inc. v. Division of Administrative Law Ethics Adjudicatory Board Panel A*, 23-0398 (La. 10/20/23), 371 So.3d 1041, 1053; *State v. Smith*, 13-2318 (La. 1/28/14), 144 So.3d 867, 872; *State v. Schirmer*, 93-2631 (La. 11/30/94), 646 So.2d 890, 900-901. The United States Supreme Court has not recognized the overbreadth doctrine outside the context of the First Amendment. *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Arizona v. U.S.*, 567 U.S. 387, 425, 132 S.Ct. 2492, 2515, 183 L.Ed.2d 351 (2012) (Scalia, J., concurring in part and dissenting in part). Because no First Amendment issue is presented here, Welch's overbreadth challenge fails.

Finally, Welch argues that applying the statute can lead to hypothetical, absurd consequences. Statutes are presumed valid, and their constitutionality should be upheld whenever possible. *AFSCME, Council #17 v. State ex rel. Dept. Of Health & Hospitals*, 01-0422 (La. 6/29/01), 789 So.2d 1263, 1269. To successfully challenge a legislative act as facially unconstitutional, the challenger must establish that no circumstance exists under which the act would be valid. *Id.* Only where a statute is clearly repugnant to the constitution will it be stricken. *Id.; Doherty v. Calcasieu Parish School Bd.*, 93-3017 (La. 4/11/94), 634 So. 2d 1172, 1174. In the context of a facial constitutional challenge, the fact that a law might operate unconstitutionally under some conceivable circumstance does not render it wholly invalid. Rather, if the court finds a single set of facts by which the statute is constitutional, the facial challenge must fail. *Webb*, 144 So.3d at 982; *see also State v. Draughter*, 13-0914 (La. 12/10/13), 130 So.3d 855, 866 (noting a person may not

11

challenge a statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court).

Under the facts presented, the statute is valid. In enacting LHEPA, the legislature prioritized the health care system over tort recovery during a public health emergency. The wisdom of that legislative goal is irrelevant to the legal principles controlling our decision. We do not consider the wisdom of the legislature in adopting a statute. *Reeder v. North*, 97-0239 (La. 10/21/97), 701 So.2d 1291, 1297. Rather, our role is to determine its applicability, legality and constitutionality. *Id.* Because there is neither a fundamental right, nor any other constitutionally protected right at issue here, the legislature was not required to narrowly tailor the restrictions imposed by La. R.S. 29:771(B)(2)(c)(i). The statute need only rationally relate to a legitimate state interest. It meets this standard.

## CONCLUSION

The trial court's denial of Welch's motion to declare La. R.S. 29:771(B)(2)(c)(i) unconstitutional is affirmed.

**AFFIRMED.**

12

# SUPREME COURT OF LOUISIANA

## No. 2024-CC-00899

## KATHLEEN WELCH AND CARROLL DEWAYNE WELCH

## VS.

## UNITED MEDICAL HEALTHWEST-NEW ORLEANS L.L.C. AND UNITED MEDICAL HEALTHCARE INC.

On Supervisory Writ to the 24th Judicial District Court, Parish of Jefferson

**Hughes, J., dissents for the reasons of Justice Griffin and Justice Knoll and assigns additional reasons.**

Absurd is the word.

# SUPREME COURT OF LOUISIANA

## No. 2024-CC-00899

## KATHLEEN WELCH AND CARROLL DEWAYNE WELCH

## VS.

## UNITED MEDICAL HEALTHWEST-NEW ORLEANS L.L.C. AND UNITED MEDICAL HEALTHCARE INC.

*On Supervisory Writ to the 24th Judicial District Court, Parish of Jefferson*

**GRIFFIN, J., dissents and assigns reasons.**

The Louisiana Health Emergency Powers Act provides, "[d]uring a state of public health emergency, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct." La. R.S. 29: 771(c)(i). By its terms, this provision applies to any provider in the state during any public health emergency, without any connectivity to the cause or location of that emergency. For example, the text of the provision would apply to injuries sustained at a doctor's home in Shreveport during a public health emergency in New Orleans.

While the plain language of a statute typically controls its interpretation, where the plain language leads to absurd results (as it does in this case), the plain language must give way for further search of the legislature's intent. La. C.C. art. 9. The legislature's clear purpose with this provision was to provide for situations where the alleged negligence was related to the emergency – such as a doctor performing lifesaving medical treatment during a natural disaster or, in cases of deadly diseases, where doctors are treating that disease.

Because the alleged malpractice in this matter is not related to the stated public health emergency, I would find that the statute does not apply and avoid the constitutional question.

# SUPREME COURT OF LOUISIANA

## No. 2024-CC-00899

## KATHLEEN WELCH AND CARROLL DEWAYNE WELCH

## VS.

## UNITED MEDICAL HEALTHWEST-NEW ORLEANS L.L.C. AND UNITED MEDICAL HEALTHCARE INC.

### On Supervisory Writ to the 24th Judicial District Court, Parish of Jefferson

**KNOLL, J.\*, dissents and assigns reasons.**

It is well-settled that courts should not pass on the constitutionality of legislation unless it is essential to the decision of the case or controversy. *Blanchard v. State Through Parks & Recreation Comm'n*, 96-0053 (La. 5/21/96), 673 So. 2d 1000, 1002. Because I believe this case can be disposed of on nonconstitutional grounds in favor of Plaintiff, I dissent.

In our civilian tradition, legislation is the solemn expression of the legislative will; thus, the interpretation of legislation is primarily the search for the legislative intent. *Borcik v. Crosby Tugs, L.L.C.*, 2016-1372, pp.4-5 (La. 5/3/17), 222 So. 3d 672, 675. When the wording of a statute is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit. R.S. 1:4. *See also* La. C.C. art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."). The starting point for interpretation of any statute is the language of the statute itself. *Borcik*, 2016-1372, p.4, 222 So. 3d at 675.

---

\* Justice Jeannette Theriot Knoll, retired, heard this case as Justice *Pro Tempore*, sitting in the vacant seat for District 3 of the Louisiana Supreme Court. She is now appearing as Justice *ad hoc* for Justice Cade R. Cole.

The immunity provision of the Louisiana Health Emergency Powers Act (LHEPA), La. R.S. 29:771(B)(2)(c)(i), states:

> During a state of ***public health emergency***, no health care provider shall be civilly liable for causing the death of, or injury to, any person or damage to any property except in the event of gross negligence or willful misconduct.  (Emphasis added.)

As explained in the majority opinion, the "public health emergency" at issue was declared by Governor John Bel Edwards on March 11, 2020, in relation to the COVID-19 pandemic. In my view, a plain language reading of this provision leads to absurd consequences in this case, where the circumstances of Plaintiff's injury did not relate at all to the "public health emergency" referenced in the statute, and indeed arose in 2019—well before the emergency was ever declared. That interpretation deprives Plaintiff of any legal recourse for injuries sustained due to the alleged negligent acts, even though those acts had no relation at all to the "public health emergency." This is a demonstrably absurd result.

When the application of a statute's plain language leads to absurd consequences, courts resort to secondary rules of statutory interpretation to discern the meaning of the statute at issue. *Borcik*, 2016-1372, p.5, 222 So. 3d at 675. In such cases, the statute "must be interpreted as having the meaning that best conforms to the purpose of the law," and the meaning "must be sought by examining the context in which they occur and the text of the law as a whole." *Id*.  These secondary principles include reading laws on the same subject matter in reference to each other. La. C.C. art. 13.  Further, because the immunity provision restricts the rights of tort victims, it must be strictly construed "against limiting the tort claimants' rights against the wrongdoer." 23-17, p. 7 (La. App. 5 Cir. 10/4/23), 374 So. 3d 166, 172. *See also*, *Dupuy v. NMC Operating Co.*, 2015-1754 (La. 3/15/16), 187 So. 3d 436, 439.

LHEPA was enacted with the stated purpose to give the government the ability to "do all that is reasonable and necessary to protect the health and safety of its citizens" during a "public health emergency." La. R.S. 29:761(A). The overarching purpose of LHEPA is thus to ***protect*** citizens during the emergency, not to provide broad immunity to healthcare providers who are alleged of ***harming*** them. To me, reading La. R.S. 29:761(A) *in pari materia* with La. R.S. 29:771(B)(2)(c)(i) clearly demonstrates the immunity provision is intended to shield health care providers from liability when their conduct is ***related to or impacted by*** a public health emergency—which was not the case here. To be clear, there is no evidence in this record that Plaintiff's injuries or condition were affected by the COVID-19 pandemic, nor that the care provided to her was at all impacted by the public health crisis. Indeed, the physicians who treated Plaintiff never even asserted her treatment was affected by the pandemic.

As a result, I believe Plaintiff should be permitted to move forward with her case, having stated a proper claim for negligence. Because the injuries Plaintiff alleges occurred in this case pertain to medical care having nothing to do with the COVID-19 public health emergency and likewise not impacted by public health emergency, she should not be required to plead "gross negligence or willful misconduct." I would therefore decline to rule on constitutionality, reverse the lower courts, and remand for further proceedings. Accordingly, I respectfully dissent.