# United States Court of Appeals
# for the Fifth Circuit

_____

No. 24-30097

_____

United States Court of Appeals
Fifth Circuit

**FILED**

June 25, 2025

Lyle W. Cayce
Clerk

Edward F. Breaux, Jr.; Linda Breaux,

*Plaintiffs—Appellants,*

*versus*

Kevin Ray Worrell; City of Wilson North Carolina; Travelers Indemnity Company, *incorrectly named as* Travelers Indemnity Insurance Company; Travelers Property Casualty Company of America,

*Defendants—Appellees,*

_____

Jessie J. Blanchard; Vickie B. Blanchard,

*Plaintiffs—Appellants,*

*versus*

Travelers Indemnity Company; Kevin Ray Worrell, *City of Wilson North Carolina,*

*Defendants—Appellees.*

_____

Appeal from the United States District Court

for the Western District of Louisiana
USDC Nos. 6:22-CV-5169, 6:22-CV-5254

_____

Before HIGGINBOTHAM, WILLETT, and HO, *Circuit Judges*.

PATRICK E. HIGGINBOTHAM, *Circuit Judge*:

As this case requires interpretation and application of a Louisiana emergency preparedness law and we doubt our ability to make a reliable *Erie* guess as to its proper reading, we CERTIFY two questions to the Louisiana Supreme Court.

## I.

The State of Louisiana enacted the Homeland Security and Emergency Assistance and Disaster Act in 1993 "[b]ecause of the existing possibility of the occurrence of emergencies and disasters of unprecedented size and destructiveness resulting from . . . natural or manmade causes . . . ."[1] The Act authorizes the creation of local organizations for emergency preparedness and the seeding of cooperation among the state's agencies and political subdivisions in preparing for and responding to emergencies,[2] and includes the following immunity provision:

> Neither the state nor any political subdivision thereof, nor other state agencies, nor, except in case of willful misconduct, the **employees or representatives** of any of them **engaged in any** homeland security and emergency preparedness and **recovery activities**, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the

_____

[1] La. R.S. 29:722(A).

[2] *Id.*

death of or any injury to persons or damage to property **as a result of such activity**.[3]

The Act defines "emergency preparedness" to mean "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters," and defines "disaster" to specifically include hurricanes.[4]

Following Hurricane Ida in 2021, the Terrebonne Parish requested assistance from Lafayette Utilities Systems ("LUS") to help its employees restore power in Houma, Louisiana. LUS in turn requested assistance from the City of Wilson, North Carolina on behalf of Terrebonne Parish. Subsequently, Terrebonne Parish and the cities of Lafayette and Wilson signed agreements to facilitate emergency assistance in Terrebonne Parish.

The City of Wilson dispatched employees to Louisiana. Due to a shortage of hotels in Houma, the employees stayed in Lafayette, commuting to Houma daily. One of those employees, Defendant Kevin Worrell, drove a vehicle owned by the City of Wilson to transport himself and another City of Wilson employee from Houma back to their hotel in Lafayette. Upon exiting Highway U.S. 90 in Morgan City, Louisiana, Worrell collided with a vehicle driven by Edward Breaux and occupied by his wife, Linda Breaux, and their friends, co-plaintiffs Jessie and Vickie Blanchard. A police officer responded and cited Worrell with failure to yield at a stop sign.

The City of Wilson considered the drive from Houma to the hotel in Lafayette to be an errand for the City of Wilson that was within the scope of his employment. Worrell was compensated on an hourly basis by the City of Wilson while in Louisiana and did not receive compensation for his work

---

[3] La. R.S. 29:735(A)(1) (emphasis added).

[4] La. R.S. 29:723(4), (6).

from the City of Houma or the State of Louisiana. Whether Worrell was directed to drive back to the hotel is unclear.[5]

The Breauxs and the Blanchards filed separate lawsuits in Louisiana state court, and their cases were removed to federal district court in the Western District of Louisiana based on diversity of citizenship. They brought two separate negligence actions against Worrell and his co-defendants, the City of Wilson and the City's insurers. Those actions were consolidated by the district court.

Defendants moved for summary judgment, asserting the Act's immunity provision. The district court found statutory immunity, granted the motions for summary judgment, and dismissed Plaintiffs' claims with prejudice. Plaintiffs then filed this appeal challenging the district court's interpretation of the scope of the Act's immunity provision.

## II.

## A.

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party."[7] A court

---

[5] The City of Wilson did admit, however, that Worrell had the City of Wilson's permission to drive the truck at the time of the accident.

[6] *Milteer v. Navarro Cnty., Tex.*, 99 F.4th 268, 272 (5th Cir. 2024) (quoting FED. R. CIV. P. 56(a)).

[7] *Id.* (quoting *E.E.O.C. v. Methodist Hosps. of Dall.*, 62 F.4th 938, 943 (5th Cir. 2023)).

4

must construe all facts and draw all reasonable inferences in the light most favorable to the non-moving party.[8]

**B.**

It is a given that we must here apply Louisiana law.[9]

"To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court,"[10] but we find no final decision applicable to the issues in this case. Without guidance from the Louisiana Supreme Court, this court "must make an *Erie* guess and determine, in our best judgment, how [the Louisiana Supreme Court] would resolve the issue if presented with the same case."[11] In making an *Erie* guess, this court "must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes."[12] In other words, "the primary basis of law for a civilian is legislation, and not (as in the common law) a great body of tradition in the form of prior decisions of the courts."[13] Jurisprudence is "merely" a secondary law source.[14]

When applying a statute, the statute's words are to be "given their generally prevailing meaning" unless the statute is unclear or its application

---

[8] *Id.* (citing *E.E.O.C.*, 62 F.4th at 943).

[9] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (citation omitted). No party contests the application of Louisiana law.

[10] *Id.*

[11] *Id.* (citations omitted).

[12] *Id.* (citations omitted).

[13] *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) (quoting *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992)).

[14] *Id.* at 261.

leads to absurd consequences.[15] When a statute is susceptible to different meanings, however, it should be given the meaning that best conforms to the general intent and purpose of the legislature that enacted the law.[16]

When no rule can be derived from legislation or custom, Louisiana courts are bound to proceed based on "justice, reason, and prevailing usages."[17] Should the Fifth Circuit need to reach this stage of legal analysis of Louisiana Law, it may turn to dictionary definitions to ascertain the meaning of a law.[18]

## III.

Defendants challenge the district court's interpretation of the Act's immunization provision and whether the Act covers Worrell. There appear to be three questions of law vital to interpreting the scope of the Act: (1) What is a "representative" of the state of Louisiana or one of its political subdivisions? (2) What does it mean to be "engaged in" an "emergency preparedness" activity? (3) What does it mean for injury to a person or damage to a property to be the "result of such activity"?

With answers to these three questions, this court may then address three corresponding questions: (1) Was Worrell here a representative of the state of Louisiana or one of its political subdivisions? (2) Was Worrell here

---

[15] La. Civ. Code art. 11; La. R.S. § 1:3; La. Civ. Code art. 9.

[16] La. Civ. Code art. 10; *Pumphrey v. City of New Orleans*, 925 So.2d 1202, 1209 (La. 2006); *Keenan v. Donaldson, Lufkin & Jenrette, Inc.*, 529 F.3d 569, 573 (5th Cir. 2008) (citing *Pumphrey*, 925 So.2d at 1209-10).

[17] La. Civ. Code art. 4.

[18] *See, e.g.*, *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 615 (5th Cir. 2014) (looking to dictionaries to define the term "motor vehicle"); *Gregor v. Argenal Great Cent. Ins. Co.*, 851 So.2d 959, 964 (La. 2003), ("Dictionaries are a valuable source for determining the common and approved usage of words." (internal quotation omitted)).

engaged in emergency preparedness activities at the time of the accident? (3) Were Plaintiffs here injured as a result of those activities? If there is a genuine dispute as to any of these material facts, while construing all facts and drawing all reasonable inferences in the light most favorable to Plaintiffs, we must vacate the district court's grant of summary judgment and remand the case for further proceedings.

## A.

The lack of clarity in the meaning of the term "representative" under the Act makes Worrell's potential status as a "representative" unclear. No plaintiff argues that Worrell was an employee of Louisiana or one of its political subdivisions, and Worrell admits that he was an employee of the City of Wilson. But was he a representative of a political subdivision of Louisiana?

The Act does not define "representative" we are unable to find Louisiana law or a Louisiana appellate court decision shedding light on the meaning of "representative" under the Act. Without guidance from the Louisiana legislature or Louisiana's courts, we may look to dictionaries. But we find no comfort there. The relevant authorities "do not lead us to a definite answer" and "any *Erie* guess would involve more divining than discerning."[19]

## B.

The legislature's use of "emergency preparedness" is likewise opaque. The Act defines "emergency preparedness" to mean "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters," and defines a "disaster" to specifically include

---

[19] *Sanders v. Boeing Co.*, 68 F.4th 977, 982 (5th Cir.) (quotation omitted), *certified question accepted* (June 2, 2023), *certified question answered*, 680 S.W.3d 340 (Tex. 2023).

hurricanes.[20] Thus, the Act may immunize certain individuals who are "engaged in" the "response to, and the recovery from" a hurricane.

As for the meaning of "engaged in," one unpublished Louisiana Supreme Court opinion gives color to the meaning of this phrase. In *Benton v. State*, a Louisiana Department of Children and Family Services employee was directed by the Department to drive to an "alternate work location" outside of normal work hours to distribute Disaster Supplemental Nutritional Assistance Program cards to flood victims.[21] The majority opinion recognizes that the employee was directed to drive to the alternate location and held that "[t]his directive and the extraordinary travel incident thereto caused [the employee] to be engaged in a homeland security and emergency preparedness and recovery activity at the time of the accident."[22]

At the very least, then, traveling *to* (but not necessarily from) an emergency preparedness destination *outside of normal working hours due to an employer's direction* can constitute "engaging in" emergency preparedness activity.[23] But it is not clear whether traveling *from* an emergency preparedness destination *within normal working hours* and *without any employer directive* can constitute "engaging in" emergency preparedness activity. It is difficult to discern—rather than divine—the meaning of

---

[20] La. R.S. 29:723(4), (6).

[21] *Benton v. State through Dep't of Child. & Fam. Servs.*, 2020-1214 (La. App. 1 Cir. 82021), *writ denied sub nom. Benton v. State*, 332 So.3d 82 (La. 2022). *See also Rabee v. Louisiana Dep't of Pub. Safety & Corr.*, 378 So.3d 71, 74-75 (La. App. 5 Cir. 2023), reh'g denied (La. 2023), *writ denied*, 379 So.3d 30 (La. 2024), and *writ denied*, 379 So.3d 34 (La. 2024).

[22] *Benton*, 332 So.3d 82.

[23] *Id.*

"emergency preparedness" and whether returning to one's hotel to sleep is part of engaging in a recovery activity under the statute.

## C.

The final legal question centers on the meaning of the phrase "result of such activity." By the statutory language, the Act only applies "while" an actor is "complying with or attempting to comply" with the Act. According to the Blanchards, the definition of "result of such activity" includes only those activities "done while *actively* engaged in recovery activities." Defendants assert that Worrell was actively engaged in recovery activities at the time of the accident, even though he was not at that time performing any activity that directly aided in Terrebonne Parish's recovery.

The answer to the third question is likely to be clarified by the answer to the second.[24] If someone is engaged in an emergency preparedness activity while traveling to one's lodging from the site of their work, then any injury arising from that travel would naturally be a "result of such activity."

## IV.

This court considers the following factors when deciding whether to certify a question to a state supreme court:

(1) the closeness of the question(s);

(2) the degree to which considerations of federal-state comity are relevant in light of the particular issue and case to be decided; and

---

[24] The second question being: "What does it mean to be 'engaged in' an 'emergency preparedness' activity?"

> (3) practical considerations, such as the possibility of significant delay or difficulty of framing the issue so as to produce a helpful response on the part of the state court.[25]

We are persuaded that these factors favor certification. Regarding the first factor, each question is close. The statute's text is unclear, no Louisiana state court directly addresses the meaning of the text, and we find no legislative authority or contemporary dictionary results detailing the meaning of the text.

Regarding the second factor, comity interests counsel certification. The Act is meant to ensure that preparations are adequate to deal with emergencies and disasters and to recover from those events.[26] Proper interpretation of the Act is significant for Louisiana, particularly given the relatively high frequency of natural disasters impacting the state.

As to the meaning of "representative" in particular, interpretive differences have developed in federal district courts. Before the 2020 amendment to the Act, Judge Ivan L.R. Lemelle read "representative" to mean a Louisiana or a political subdivision that "provid[es] assignments and exercise[es] operational control."[27] Three years earlier, Judge Lemelle determined that one is a representative if they "work[] at the behest of" Louisiana or one of its political subdivisions and comply with the legislative intent of the Act.[28] Judge Eldon E. Fallon in *Lumpkin* and Judge David C.

---

[25] *Sanders*, 68 F.4th at 981 (citations omitted); *Menard v. Targa Res., L.L.C.*, 56 F.4th 1019, 1022 (5th Cir.) (citations omitted), *certified question accepted*, 358 So.3d 37 (La. 2023), and *certified question answered*, 366 So.3d 1238 (La. 2023).

[26] La. R.S. 29:722(B).

[27] *Banks v. City of New Orleans*, 628 F. Supp. 2d 686, 691 (E.D. La. 2009).

[28] *Robin v. United States*, No. CIV. A. 04-2230, 2006 WL 2038169, at *4 (E.D. La. July 17, 2006), *aff'd*, 233 F. App'x 350 (5th Cir. 2007).

Joseph in the instant case defined "representative" differently.[29] Certifying questions regarding "representative" and the other vague terms would help to ensure proper interpretation of Louisiana law across federal courts, weighing in favor of certification.

Regarding these first two factors, this court has noted that cases "where important state interests are at stake and the state courts have not provided clear guidance on how to proceed" are "candidates for certification."[30] Here, Louisiana's place in the heartland and the state's interest in responding to natural disasters—many unique to it—and given the absence of state court opportunity to offer needed guidance on the questions raised above, this case is a strong candidate for certification.

Turning to the final factor, we can perceive no hardship in certifying these questions nor are we aware of any reason for significant delay, and certifying questions in the service of federalism to the state court that speaks the final word best ensures finality.

## V.

Accordingly, we CERTIFY two questions to the Louisiana Supreme Court which, if answered, will decide this case:

> (1) Is an employee of a city of another state—working under an agreement for emergency assistance between that city and a Louisiana municipality—a "representative" of the State of

---

[29] *See Breaux v. Worrell*, No. 6:22-CV-05169, 2024 WL 263943, at *4-6 (W.D. La. Jan. 24, 2024); *Lumpkin v. Lanfair*, No. CIV. A. 09-6248, 2010 WL 3825427, at *5 (E.D. La. Sept. 23, 2010).

[30] *Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 333 (5th Cir.) (quotation omitted), *certified question accepted* (Oct. 26, 2018), *certified question answered*, 579 S.W.3d 53 (Tex. 2019).

Louisiana or one of its political subdivisions within the meaning of La. R.S. 29.735?

(2) Is an individual providing emergency assistance in Louisiana "engaging in . . . emergency preparedness and recovery activities" under La. R.S. 29.735 while commuting from the recovery site to his lodging?

We disclaim any intention or desire that the Louisiana Supreme Court confine its reply to the precise form or scope of the questions certified. We will resolve this case in accordance with any opinion provided on this question by the Court. The Clerk of this Court is directed to transmit this certification and request to the Louisiana Supreme Court in conformity with the usual practice.

QUESTIONS CERTIFIED.

JAMES C. HO, *Circuit Judge*, concurring in the judgment:

I must confess that I have trouble imagining how a municipal employee and resident of one state could plausibly be considered a "representative" of another state. And especially not under the circumstances presented in this case—we would never describe a United States soldier deployed to a foreign country to provide disaster relief as a "representative" of that foreign country, after all. That having been said, my distinguished colleagues would prefer to have these issues resolved by the Supreme Court of Louisiana, considering that these are issues of Louisiana state law. That is an entirely reasonable course of action. Accordingly, I concur in the judgment.