# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #014

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **10th day of April, 2026** are as follows:

**BY Hughes, J.:**

2025-CQ-00856     EDWARD F. BREAUX, JR.; LINDA BREAUX  VS.  KEVIN RAY WORRELL; CITY OF WILSON NORTH CAROLINA; TRAVELERS INDEMNITY COMPANY, INCORRECTLY NAMED AS TRAVELERS INDEMNITY INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA C/W JESSIE J. BLANCHARD; VICKIE B. BLANCHARD VS. TRAVELERS INDEMNITY COMPANY; KEVIN RAY WORRELL, CITY OF WILSON NORTH CAROLINA

   ***CERTIFIED QUESTION ANSWERED. SEE OPINION.***

   Weimer, C.J., concurs in the result for the reasons assigned by Cole, J., and Penzato, J.

   Guidry, J., concurs for the reasons assigned by Penzato, J.

   Cole, J., additionally concurs and assigns reasons.

   Penzato, J., concurs in the result and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2025-CQ-00856

## EDWARD F. BREAUX, JR.; LINDA BREAUX

## VERSUS

## KEVIN RAY WORRELL; CITY OF WILSON NORTH CAROLINA; TRAVELERS INDEMNITY COMPANY, INCORRECTLY NAMED AS TRAVELERS INDEMNITY INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

## CONSOLIDATED WITH

## JESSIE J. BLANCHARD; VICKIE B. BLANCHARD

## VERSUS

## TRAVELERS INDEMNITY COMPANY; KEVIN RAY WORRELL, CITY OF WILSON NORTH CAROLINA

## ON CERTIFIED QUESTION FROM
## THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

**HUGHES, J**.*

The United States Court of Appeals, Fifth Circuit, in **Breaux v. Worrell**, 141 F.4th 712 (5th Cir.), requested certification of the following two questions:[1]

(1)  Is an employee of a city of another state—working under an agreement for emergency assistance between that city and a Louisiana municipality—a "representative" of the State of Louisiana or one of its political subdivisions within the meaning of La. R.S. 29:735?

(2)  Is an individual providing emergency assistance in Louisiana "engaging in ... emergency preparedness and recovery activities" under La. R.S. 29:735 while commuting from the recovery site to his lodging?

---

[1] In addition, the Fifth Circuit noted: "We disclaim any intention or desire that the Louisiana Supreme Court confine its reply to the precise form or scope of the questions certified. We will resolve this case in accordance with any opinion provided on this question by the Court. The Clerk of this Court is directed to transmit this certification and request to the Louisiana Supreme Court in conformity with the usual practice."

\* Judge Allison H. Penzato of the Court of Appeal, First Circuit, appointed Justice pro tempore, sitting for the vacancy in the First District.

This court granted certification in **Breaux v. Worrell**, 25-00856 (La. 10/14/25), 420 So.3d 679, and we answer herein that the Louisiana Homeland Security and Emergency Assistance and Disaster Act (LHSEADA), La. R.S. 29:721 et seq., does not include within its definition of "representative" the defendant Kevin Ray Worrell. Having so decided, we find it unnecessary to consider the second question certified to this court.

## FACTS AND PROCEDURAL HISTORY

This action arose out of an automobile accident on September 10, 2021, in which the defendant, Kevin Ray Worrell, a resident of North Carolina, ran a red light causing his vehicle to collide with that of the plaintiffs, injuring them. At that time, Mr. Worrell was in Louisiana working as an electrical lineman to assist in restoring power in the Houma area, following Hurricane Ida.

The injured plaintiffs originally filed tort actions in the St. Mary Parish district court; however, these actions were subsequently consolidated and removed to the federal district court, on the basis of diversity.

The instant certified questions arose out of motions to dismiss and/or for summary judgment, filed by defendants, and granted by the federal district court. See **Breaux v. Worrell**, No. 6:22-CV-05169, 2024 WL 263943 at *1 (W.D. La. 2024). The federal district court found that Mr. Worrell "was acting within the purview of the LHSEADA's Immunity Provision [La. R.S. 29:735(A)(1)] at the time of the subject automobile accident." **Id**., 2024 WL 263943 at *7.

In so ruling, the federal district court relied on the Black's Law Dictionary (11th ed. 2019) definition of a "representative" as "someone who stands for or acts on behalf of another," and noted that Worrell was working in, and at the request of, Terrebonne Parish (a political subdivision of the State of Louisiana) to perform a governmental function normally assigned to a Terrebonne Parish employee. **Breaux v. Worrell**, 2024 WL 263943 at *6. Further, the federal district court found that,

2

"for crew members such as Worrell, his return to Lafayette each day after work was a necessary part of the 'emergency preparedness activities….'" **Breaux v. Worrell**, 2024 WL 263943 at *7.

Therefore, the federal district court concluded that, since City of Wilson employees (including Mr. Worrell) were performing "functionally the same work" as Terrebonne Parish employees, in repairing electrical lines, they "were indisputably standing in for Terrebonne Parish employees and acting on behalf of the parish in its hurricane recovery efforts" and, thus, the Wilson, North Carolina employees "were acting as Terrebonne Parish's 'representatives' for the limited purpose of its disaster recovery efforts." **Id.**, 2024 WL 263943 at *5.

Exhibits filed in the federal district court revealed the following uncontested facts, as stated in **Breaux v. Worrell**, 2024 WL 263943 at *1-2 (footnotes omitted):

> In anticipation of Hurricane Ida, Governor John Bel Edwards declared a State of Emergency pursuant to the Louisiana Homeland Security and Emergency Assistance and Disaster Act, La. R.S. 29:721 et seq., from August 26, 2021 to September 27, 2021. [Doc. 49-3, pp. 1-2]. When Hurricane Ida struck the Louisiana coast on August 29, 2021, the city of Houma suffered significant damage, including widespread loss of electrical power to its residents.
>
> Terrebonne Parish Consolidated Government ("Terrebonne Parish"), through its Utilities Department, operates Houma's electric system and services about 13,000 customers. [Doc. 49-5, p. 3]. Due to the scope of the post-hurricane devastation, Terrebonne Parish requested assistance from Lafayette Utilities Systems ("LUS") to help its employees in restoring power. [Doc 49-5, p. 3]. LUS then used its mutual aid network to request help from the City of Wilson, North Carolina ("City of Wilson") on behalf of Terrebonne Parish. [Doc 49-5, p. 3]. Pursuant to this arrangement, Terrebonne Parish signed a mutual aid agreement provided to it by the City of Wilson. [Doc. 49-6, pp. 98-100]. In response, the City of Wilson dispatched 13 employees to assist in the hurricane recovery effort in Louisiana. [Doc. 49-5, p. 4]. One of these employees was Kevin Ray Worrell ("Worrell"). [Doc. 49-5, p. 28].
>
> LUS arranged for the City of Wilson employees to stay at hotels in Lafayette, Louisiana, and commute back and forth to Houma every day to perform their duties. [Doc. 49-5, p. 3]. On September 10, 2021, while driving a 2009 Ford F350 owned by the City of Wilson back to his hotel in Lafayette from Houma, Worrell collided with Plaintiffs' vehicle at the Morgan City exit to Highway US 90. [Doc. 53-3, pp. 4-8]. The responding officer cited Worrell with failure to yield at a stop sign. [Doc. 53-3, p. 5]. …

3

The federal district court further noted:

> The City of Wilson also signed LUS's Request for Mutual Aid Pursuant to APPA Mutual Aid Agreements and Addendum. [Doc. 49-5, pp. 56-61]. The Parish President of Terrebonne Parish signed the Louisiana Mutual Aid Agreement. [Doc. 49-6, p. 97]. Additionally, the Utilities Director for Lafayette signed the City of Wilson's Emergency Assistance Agreement and Addendum. [Doc. 49-6, pp. 103-113]. The Terrebonne Parish Utilities Director also signed the City of Wilson's Emergency Assistance Agreement and Addendum. [Doc. 49-6, pp. 98-100].
>
> * * *
>
> The cited provision of the Mutual Aid Agreement states,
>> Personnel furnished by the Municipality pursuant to this Agreement shall be conclusively deemed, for all purposes, to remain officials and employees of the Municipality and while providing aid hereunder and while traveling to and from a Beneficiary to provide aid hereunder, such personnel shall retain all rights, privileges, immunities, and benefits, including without limitation, coverage under the North Carolina Workmen's Compensation Act, as they enjoyed while performing their normal duties for the Municipality. [Doc. 46-6, p. 94].
>
> The pertinent language of the Mutual Aid Agreement Addendum is as follows:
>> The Municipality is performing services under this Agreement as an independent contractor and shall act as such at all times during the term of this agreement. The Municipality and the Beneficiaries shall not act, or be deemed to act, as agents or partners of the other, or be acting in any joint venture under this Agreement. Nothing in this paragraph 14 shall be construed to require the Municipality to obtain or maintain a contractor's license. [Doc. 49-6, p. 99].

**Breaux v. Worrell**, 2024 WL 263943 at *1-3 n.3 and n.5.

On review of the federal district court opinion and in deciding to submit the certified questions to this court, the federal Fifth Circuit included the following undisputed facts in its certification request to this court, in **Breaux v. Worrell**, 141 F.4th 712, 715 (5th Cir.) (footnote omitted):

> Following Hurricane Ida in 2021, the Terrebonne Parish requested assistance from Lafayette Utilities Systems ("LUS") to help its employees restore power in Houma, Louisiana. LUS in turn requested assistance from the City of Wilson, North Carolina on behalf of Terrebonne Parish. Subsequently, Terrebonne Parish and the cities of Lafayette and Wilson signed agreements to facilitate emergency assistance in Terrebonne Parish.
> The City of Wilson dispatched employees to Louisiana. Due to a shortage of hotels in Houma, the employees stayed in Lafayette,

4

commuting to Houma daily. One of those employees, Defendant Kevin Worrell, drove a vehicle owned by the City of Wilson to transport himself and another City of Wilson employee from Houma back to their hotel in Lafayette. Upon exiting Highway U.S. 90 in Morgan City, Louisiana, Worrell collided with a vehicle driven by Edward Breaux and occupied by his wife, Linda Breaux, and their friends, co-plaintiffs Jessie and Vickie Blanchard. A police officer responded and cited Worrell with failure to yield at a stop sign.

The City of Wilson considered the drive from Houma to the hotel in Lafayette to be an errand for the City of Wilson that was within the scope of his employment. Worrell was compensated on an hourly basis by the City of Wilson while in Louisiana and did not receive compensation for his work from the City of Houma or the State of Louisiana. Whether Worrell was directed to drive back to the hotel is unclear.

In addition to the facts stated in the published federal court opinions (quoted above), the federal Fifth Circuit transmitted to this court the following exhibits, filed by the parties in connection with the motions to dismiss and/or for summary judgment: the "Declaration" of plaintiff Edward Breaux; the "Declaration" of Brian Poythress (Electric Distribution Supervisor for Wilson Energy for the City of Wilson, North Carolina); excerpts of defendant Kevin Worrell's answers to interrogatories; excerpts of defendant Kevin Worrell's deposition; the August 1997 "Agreement for Emergency Assistance" (executed by the mayor of the City of Wilson, North Carolina); the October 2003 "Amendment to Agreement for Emergency Assistance" (executed by the mayor of the City of Wilson, North Carolina); the October 2003 "Amendment to Agreement for Emergency Assistance" (executed by the Director of LUS on behalf of the City of Lafayette, Louisiana); the October 2003 "Amendment to Agreement for Emergency Assistance" (executed by the Utilities Director for the City of Houma/Terrebonne Parish, Louisiana); an August 2021 email from Bryan Poythress, forwarding an email from Richard H. Worsinger (Director of Wilson Energy for the City of Wilson, North Carolina), regarding working with LUS to assist in restoring power in Terrebonne Parish, Louisiana, following Hurricane Ida.

The deposition of Mr. Worrell indicates, and is not disputed by the partes, that

he was at all pertinent times a payroll employee of, and received payment for his work as an electrical lineman from, the City of Wilson. Further, Mr. Worrell stated that he was directed and supervised in the work he undertook, while in Louisiana, only by his Wilson supervisor, Brian Poythress. At the time of the automobile accident Worrell was driving a work truck owned by the City of Wilson, traveling back to his Lafayette lodging, at about 5:47 p.m., after he had completed his work that day, repairing damaged electrical power lines in Houma, Louisiana.

On appeal, the federal Fifth Circuit enumerated three questions necessary for delineation of the LHSEADA's scope and application: (1) What is a "representative" of the state of Louisiana or one of its political subdivisions? (2) What does it mean to be "engaged in" an "emergency preparedness" activity? (3) What does it mean for injury to a person or damage to a property to be the "result of such activity"? **Breaux v. Worrell**, 141 F.4th 712, 717 (5th Cir. 2025). However, finding a lack of clarity in the LHSEADA terms "representative," "emergency preparedness," "engaged in" the response to, and the recovery from a hurricane, and "result of such activity," the Fifth Circuit found it appropriate to certify questions on these issues to this court. **Breaux v. Worrell**, 141 F.4th at 717-18. We accepted the certification and offer the following guidance.

## DISCUSSION

Supreme Court Rule XII governs certified questions to this court, providing in pertinent part:

### RULE XII. CERTIFIED QUESTIONS FROM FEDERAL COURTS AND OTHER STATE COURTS OF LAST RESORT[2]

#### Section 1. Authority to Certify Questions

When the Supreme Court of the United States, any United States Circuit Court of Appeals, any United States District Court, or any state court of last resort determines that a proceeding before it involves *questions of Louisiana law that are determinative of the cause* and

---

[2] As amended and effective January 1, 2026. See also La. R.S. 13:72.1.

6

> lack clear controlling precedent from the Supreme Court of Louisiana, the court may, before rendering a decision, certify those questions to the Supreme Court of Louisiana *for a judgment or opinion*. The Supreme Court of Louisiana may, in its discretion, decline to answer the certified questions or reformulate the certified questions.
>
> * * *

(Emphasis added.)

This court decides certified questions to resolve questions of Louisiana law, and we decide the questions based on facts presented by the court requesting certification. See **Borcik v. Crosby Tugs, L.L.C.**, 16-1372, pp. 1-2 (La. 5/3/17), 222 So.3d 672, 673; **MCI Communications Services, Inc. v. Hagan**, 11-1039, p. 1 (La. 10/25/11), 74 So.3d 1148.

At the outset, we agree with the Fifth Circuit Court of Appeals that La. R.S. 29:735(A)(1) of the LHSEADA[3] sets forth three preliminary requirements for those seeking entitlement to immunity: (1) having status as the state, a political subdivision thereof, a state agency, or an employee or representative of any of these; (2) engaging in any homeland security, emergency preparedness, and/or recovery activities; and (3) resulting injury or damage to a person or property.

Important to the first certified question – whether Mr. Worrell became a "representative" of a Louisiana governmental entity for purposes of the LHSEADA – is the fact that Mr. Worrell's work in Louisiana was pursuant to a contractual agreement between North Carolina and Louisiana political subdivisions.

"Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles."[4] **Hunt Trust v. Crowell Land & Mineral**

---

[3] The LHSEADA confers the power "to authorize and provide for cooperation in emergency or disaster prevention, mitigation, preparedness, response, and recovery," "upon the governor and upon the parish presidents." La. R.S. 29:722(A). See also La. Const. Art. VI, § 44 ("Political subdivision" means "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions.").

[4] See La. C.C. art. 1971 ("Parties are free to contract for any object that is lawful, possible, and determined or determinable."); La. C.C. art. 1983 ("Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith.").

**Corp.**, 210 La. 945, 955, 28 So.2d 669, 673 (1946). "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used."[5] **Id**. "[C]ourts are bound to give legal effect to all … contracts according to the true intent of all the parties … and this … intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences."[6] **Id**.

Although the term "representative" is not defined in the statutory provisions of the LHSEADA, the Louisiana Administrative Code, in Title 55 "Public Safety, Part XXIII "Intrastate Mutual Aid Compact," Section 105 "Definitions" (promulgated by the Director of the Governor's Office of Homeland Security and Emergency Preparedness pursuant to La. R.S. 29:725(C)), defines "Authorized Representative" as a "person designated by the chief executive of the parish to obligate resources and expend funds on behalf of the parish."

In addition, our Civil Code sets out the concept of "representation" in La. C.C. arts. 2985 through 2988, stating in Article 2985:[7] "A person may represent another person in legal relations as provided by law or by juridical act. This is called representation." "The authority of the representative may be conferred by law, by

---

[5] See La. C.C. art. 2045 ("Interpretation of a contract is the determination of the common intent of the parties.").

[6] See La. C.C. art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

[7] "All contracts, nominate and innominate, are subject to the rules of this title." La. C.C. art. 1915 (referencing Title IV, Conventional Obligations or Contracts, La. C.C. arts. 1906 - 2291, which we cite herein in preceding footnotes). See also La. C.C. art. 13 ("Laws on the same subject matter must be interpreted in reference to each other."). It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, the statute specifically directed to the matter at issue must prevail as an exception to the more general statute. **Fontenot v. Reddell Vidrine Water Dist.**, 02-0439, p. 20 (La. 1/14/03), 836 So.2d 14, 28; **LeBreton v. Rabito**, 97-2221, p. 7 (La. 7/8/98), 714 So.2d 1226, 1229. In the absence of a more specific statutory law, the general provisions of the Louisiana Civil Code govern, if applicable. See e.g. **Champagne v. Ward**, 03-3211, p. 11 (La. 1/19/05), 893 So.2d 773, 780 ("[T]he provisions of Book IV are not intended to supersede more specific … rules contained in other Louisiana statutes…. When applicable, those rules, being more specific, will prevail over the provisions of Book IV of the Civil Code….").

contract, such as mandate or partnership, or by the unilateral juridical act of procuration." La. C.C. art. 2986.

"A procuration[8] is a unilateral juridical act by which a person, the principal, confers authority on another person, the representative, to represent the principal in legal relations. The procuration may be addressed to the representative or to a person with whom the representative is authorized to represent the principal in legal relations." La. C.C. art. 2987. "A procuration is subject to the rules governing mandate to the extent that the application of those rules is compatible with the nature of the procuration." La. C.C. art. 2988.

"A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La. C.C. art. 2989. "In all matters for which no special provision is made in this Title, the contract of mandate is governed by the Titles of "Obligations in General" [(La. C.C. arts. 1756 to 1905)] and "Conventional Obligations or Contracts" [(La. C.C. arts. 1906 to 2291)]." La. C.C. art. 2990. See also **McCray v. Southern Aggregates, LLC**, 18-1545, pp. 8-9 (La. App. 1 Cir. 8/29/19), 282 So.3d 262, 267-68 ("A person may represent another person in legal relations as provided by law or by juridical act. La. C.C. art. 2985. An agent is one who acts for or in place of another (the principal) by authority from the latter. An agency relationship may be created by express appointment of a mandatary under Article 2985 or by implied appointment arising from apparent authority.").

In an "actual authority" situation, the principal makes the manifestation first

---

[8] "The civilian term 'procuration' has been used instead of the colloquial 'power of attorney,' which is a common-law term of art. This usage avoids confusion with common-law institutions and the designation of the representative as 'attorney.'" La. C.C. art. 2987, 1997 Revision Comment (a). "A procuration is a 'unilateral juridical act' that confers on the representative authority to represent the principal in legal relations. It differs from a mandate which is a 'contract' that confers on the mandatary authority to transact one or more affairs for the principal." La. C.C. art. 2987, 1997 Revision Comment (b).

to the agent; in an "apparent authority" situation, the principal makes this manifestation to a third person. **Tedesco v. Gentry Development, Inc.**, 540 So.2d 960, 963 (La. 1989). This court discussed apparent authority in **Boulos v. Morrison**, 503 So.2d 1, 3 (La. 1987), stating:

> Mandate is an act by which one person, a principal, gives power to another, an agent, to transact for him and in his name one or several affairs. LSA-C.C. art. 2985. An agent's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. … As between principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by his apparent authority. … Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent. …
>
> For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent's authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent's actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal. …

No evidence in the instant case shows that Mr. Worrell received any actual or apparent authority to represent the State of Louisiana or its political subdivisions. To the contrary, the Mutual Aid Agreement between the Louisiana and North Carolina entities expressly stated that all personnel furnished to work in Louisiana would be "conclusively deemed, for all purposes, to remain officials and employees of [the City of Wilson, North Carolina] … while providing aid hereunder and while traveling to and from a Beneficiary to provide aid," and "such personnel shall retain all rights, privileges, immunities and benefits … as they enjoy while performing their normal duties" for the City of Wilson; and further that the City of Wilson, North Carolina, would perform services under the agreement "as an independent contractor," acting "as such at all times." Further, it was contractually agreed that, during the term of the agreement, neither the City of Wilson, nor its beneficiaries, would "act, or be deemed to act, as agents or partners of the other, or be acting in

any joint venture."[9]

In Louisiana, a contract constitutes the law between the parties, absent a conflict with legislation or public policy. **Marcus v. Hanover Ins. Co.**, 98-2040, p. 4 (La. 6/4/99), 740 So.2d 603, 606; **Bryant v. United Services Automobile Ass'n**, 03-3491, p. 13 (La. 9/9/04), 881 So.2d 1214, 1221-22; **Pareti v. Sentry Indemnity Co.**, 536 So.2d 417, 420 (La. 1988).

Here, the provisions of the Mutual Aid Agreement, governing the Louisiana and North Carolina entities acting thereunder, prohibit these entities from acting on behalf of, or as the agent of, one another, and further expressly state that officials and employees of the City of Wilson, North Carolina will remain so, at all times and for all purposes, while working in Louisiana. Therefore, even if a Louisiana actor had attempted to empower Mr. Worrell with some type of representative authority, it would have been ineffective, as an *ultra vires* act.

For these reasons, we conclude that under Louisiana law Mr. Worrell would not be considered to have been a "representative" of any Louisiana governmental entity while working in this state, following Hurricane Ida, for purposes of LHSEADA immunity. Since La. R.S. 29:735 provides for immunity only to State of Louisiana actors (representatives or employees of the state, a political subdivision thereof, or a state agency) under the circumstances set forth therein, and Mr. Worrell does not qualify as such, there is no immunity in this case under the statute.[10]

---

[9] This contractual language also excludes the possibility that Mr. Worrell might otherwise have been considered a borrowed or statutory employee in this state, as set forth in La. R.S. 23:1061(A)(3): "[A] statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer."

[10] Nor do we find coverage under La R.S. 29:733 of the LHSEADA under the circumstances present in the instant case. Paragraph (B) of R.S. 29:733 expressly states that its provisions apply "only to requests for assistance made by the director [of the Governor's Office of Homeland Security and Emergency Preparedness (GOHSEP)] and to authorized representatives of another state." Here, parish officials made the requests for assistance to the City of Wilson, North Carolina; there has been no suggestion that this state's Director of the GOHSEP was involved.

11

With respect to the Fifth Circuit's second certified question - whether an individual providing emergency assistance in Louisiana is engaging in "emergency preparedness and recovery activities" for purposes of La. R.S. 29:735 while commuting from the recovery site to his lodging – we find it unnecessary to consider this question, given that Mr. Worrell did not meet the LHSEADA requirement of status as an representative or employee of the state, any political subdivision thereof, or other state agency, and that failure alone disqualifies him for immunity under the statute.[11]

**DECREE**

Pursuant to Rule XII, Supreme Court of Louisiana, the judgment rendered by this court upon the questions certified shall be sent by the clerk of this court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties.

---

[11] Statutes in Louisiana granting immunity from liability, in derogation of the general rights of tort victims, are strictly construed. **Ruiz v. Oniate**, 97-2412, pp. 4-5 (La. 5/19/98), 713 So.2d 442, 444-45; **Price v. City of Bossier City**, 96-2408, p. 6 (La. 5/20/97), 693 So.2d 1169, 1172; **Kelty v. Brumfield**, 93-1142, p. 9 (La. 2/25/94), 633 So.2d 1210, 1216 (per curiam); **Banks v. Parish of Jefferson**, 08-0027, p. 9 (La. App. 5 Cir. 6/19/08), 990 So.2d 26, 30, <u>writ denied</u>, 08-1625 (La. 10/24/08), 992 So.2d 1043.

# SUPREME COURT OF LOUISIANA

## No. 2025-CQ-00856

## EDWARD F. BREAUX, JR.; LINDA BREAUX

## VS.

## KEVIN RAY WORRELL; CITY OF WILSON NORTH CAROLINA; TRAVELERS INDEMNITY COMPANY, INCORRECTLY NAMED AS TRAVELERS INDEMNITY INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

## C/W

## JESSIE J. BLANCHARD; VICKIE B. BLANCHARD

## VS.

## TRAVELERS INDEMNITY COMPANY; KEVIN RAY WORRELL, CITY OF WILSON NORTH CAROLINA

On Certified Question from the United States Court of Appeals for the Fifth Circuit

**WEIMER, C.J.**, concurs in the result for the reasons assigned by Justices Cole and Penzato.

**EDWARD F. BREAUX, JR.; LINDA BREAUX**

**VS.**

**KEVIN RAY WORRELL; CITY OF WILSON NORTH CAROLINA; TRAVELERS INDEMNITY COMPANY, INCORRECTLY NAMED AS TRAVELERS INDEMNITY INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA**

**C/W**

**JESSIE J. BLANCHARD; VICKIE B. BLANCHARD**

**VS.**

**TRAVELERS INDEMNITY COMPANY; KEVIN RAY WORRELL, CITY OF WILSON NORTH CAROLINA**

**On Certified Question from the United States Court of Appeals for the Fifth Circuit**

**COLE, J., additionally concurring.**

I additionally concur and write separately to (i) emphasize one manner in which "representative" status under the Act may arise under Louisiana law, and (ii) propose a framework for determining when conduct falls within "emergency preparedness and recovery activities."

I agree with the majority that Certified Question One should be answered in the negative: Mr. Worrell was not an "employee or representative" of the State or a political subdivision for purposes of La. R.S. 29:735(A)(1). *See Weber v. State*, 635 So. 2d 188, 193 (La. 1994) ("Immunity statutes must be strictly construed against the party claiming the immunity."). I write separately to emphasize that, under Louisiana law, representative status arises only "as provided by law or by juridical act." La. C.C. art. 2985. Because no statute designates Mr. Worrell a representative of the State or a political subdivision, such status could have been created only

1

through a juridical act, such as a contract. *See* La. C.C. arts. 2985-86. While I agree with the majority that nothing in the Disaster Act suggests the Legislature intended "representatives" to include individuals in Mr. Worrell's position, a different question would be presented if the Mutual Aid Agreement expressly conferred representative status on deployed personnel for the limited purpose of effectuating the agreement's emergency mission. The parties here could have included—but did not—a provision deeming deployed personnel to be "representatives" of the state or its political subdivision for purposes of the Act.

The majority declined to answer Certified Question Two, whether an individual providing emergency assistance in Louisiana is engaged in "emergency preparedness and recovery activities" for purposes of La. R.S. 29:735. I also write separately to explain that I would adopt a "nexus test" as an analytical framework in future cases. Whether conduct falls within "emergency preparedness and recovery activities" should turn on whether there is a sufficient nexus between the act at issue and the governmental mission of mitigation, preparation, response, and recovery. *See* La. R.S. 29:722(A). Relevant, non-exclusive considerations may include contemporaneousness with the declared emergency, use of a government or work-designated vehicle, and travel between designated recovery locations such as worksites or assigned lodging. Purely personal errands, substantial detours, or other conduct bearing no functional relationship to the emergency mission would fall outside the statute's protection. In my view, this interpretation accords with the Act's broad purpose to detect, prevent, prepare for, respond to, or recover from disasters. La. R.S. 29:722(A).

For these reasons, I additionally concur with the majority's answer to the first certified question and would adopt the nexus test as a framework to guide future questions related to La. R.S. 29:735.

## SUPREME COURT OF LOUISIANA

## No. 2025-CQ-00856

## EDWARD F. BREAUX, JR.; LINDA BREAUX

## VS.

## KEVIN RAY WORRELL; CITY OF WILSON NORTH CAROLINA; TRAVELERS INDEMNITY COMPANY, INCORRECTLY NAMED AS TRAVELERS INDEMNITY INSURANCE COMPANY; TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

## C/W

## JESSIE J. BLANCHARD; VICKIE B. BLANCHARD

## VS.

## TRAVELERS INDEMNITY COMPANY; KEVIN RAY WORRELL, CITY OF WILSON NORTH CAROLINA

On Certified Question from the United States Court of Appeals for the Fifth Circuit

**PENZATO, JUSTICE PRO TEMPORE, CONCURS IN THE RESULT.**

I concur in the result reached by the majority as to Certified Question One: an employee of a city of another state – working under an agreement for emergency assistance between that city and a Louisiana municipality – is not a "representative" of the State of Louisiana or one of its political subdivisions within the meaning of La. R.S. 29:735.[1] However, in my view, the majority's opinion exceeds the scope of the legal question presented by considering facts and evidence outside of those presented by the United States Court of Appeals, Fifth Circuit.

---

[1] La. R.S. 29:735(A)(1) states:

> **Neither the state nor any** political subdivision thereof, nor other state agencies, nor, except in case of willful misconduct, the employees or **representatives** of any of them **engaged in any homeland security and emergency preparedness and recovery activities**, while complying with or attempting to comply with this Chapter or any rule or regulation promulgated pursuant to the provisions of this Chapter shall be liable for the death of or any injury to persons or damage to property as a result of such activity. [emphasis supplied]

1

While the majority sets forth the proper legal framework to analyze this issue, I believe the majority erred in making the factual conclusion that Mr. Worrell was not a representative and was not entitled to immunity in this case. Though the facts are undisputed, I believe the final factual determination of whether Mr. Worrell was, in fact, a representative of the State of Louisiana as a result of the contractual arrangement is a matter to be addressed by the Fifth Circuit.

It is well-settled that when this court considers a certified question, the court "may only render a judgment or opinion concerning such questions or propositions of Louisiana law, not resolve factual issues." *Pickard v. Amazon.com, Inc*., 2023-01596, p. 15 (La. 6/28/24), 387 So. 3d 515, 526. Any fact-finding responsibility is reserved to the federal court. *Id.*

As set forth in the certified question, the Fifth Circuit explains that agreements between Terrebonne Parish and the City of Wilson, North Carolina, were made in order to facilitate emergency assistance in Terrebonne Parish. However, the contents of the agreements were not provided when presenting the question. The facts provided by the Fifth Circuit also included the statement that: "the City of Wilson considered the drive from Houma [in Terrebonne Parish] to the hotel in Lafayette to be an errand for the City of Wilson that was within the scope of his employment." Again, the factual support for this statement is not set forth.

Considering only these limited facts and circumstances presented by the Fifth Circuit, I agree that an employee of another state would not be classified as a "representative" under La. R.S. 29:735 or any other definition provided in Louisiana law if the contractual agreement between the parties failed to provide for such status. However, the ultimate resolution of this question will be governed by the contractual arrangement, which establishes the relationship between the parties.

2

In my view, consideration of any summary judgment evidence to determine whether an issue of material fact exists in this case is a fact-finding responsibility reserved for the federal court.[2] *See Pickard*, *supra*. Thus, I would limit the answer to Certified Question One to an analysis of the legal issue within the context of the limited facts provided by the federal court opinion certifying the question.

In light of my position on Certified Question One, I would address the legal issue presented in Certified Question Two: whether an individual providing emergency assistance in Louisiana is "engag[ing] in … emergency preparedness[3] and recovery activities" under La. R.S. 29:735 while commuting from the recovery site to his lodging.

Resolution of this issue turns on the totality of the circumstances presented in each case. Thus, I agree with Justice Cole's concurrence, and would also adopt a "nexus test" to consider the totality of circumstances surrounding the connexity between the activity and the state's mission of mitigation, preparation, response, and recovery" as set forth in La. R.S. 29:722(A). There are numerous factors, as pointed out by Justice Cole, relevant to determine whether an individual is "engaged in" emergency preparedness and recovery activities, including: "contemporaneousness with the declared emergency, use of a government or work-designated vehicle, [manner of pay,] and travel between designated recovery locations such as worksites or assigned lodging. Purely personal errands, substantial detours, or other conduct bearing no functional relationship to the emergency mission would fall outside the statute's protection."

---

[2] Notably, the terms of the parties' agreements and the contents of Mr. Worrell's deposition as to his employment arrangement were not presented by the federal court when it certified the question, thus they are outside of the scope of this court's consideration.

[3] La. R.S. 29:723(7) defines "[e]mergency preparedness" as "the mitigation of, preparation for, response to, and the recovery from emergencies or disasters."

In *Thibodeaux v. American Alternative Ins. Corp.*, 2024-0383, 2024 WL 23 5182404 (La. App. 1 Cir. 12/20/24) (unpublished), the appellate court considered a multitude of factors including that the employee, a Terrebonne Parish pump attendant, was tasked with servicing pumps in preparation for a hurricane pursuant to an emergency declaration. He serviced two pumps and was on his way to a third when he was told by his supervisor to return home to weather the storm. At the time of the accident, he had not yet turned around to begin his drive home. Notably, the pump attendant was paid hazard pay from the time he left until the time he returned home. *Id.* at *5-7. Considering the facts and circumstances, the court held the pump attendant was "engaged in" emergency preparedness, such that immunity under La. R.S. 29:735(A)(1) applied. *Id*. at *7.

Conversely, the federal district court in *Lumpkin v. Lanfair*, 2010 WL 3825427, at *4–5 (E.D. La. Sept. 23, 2010) considered a number of similar factors when concluding a member of the Tennessee Army National Guard, who was deployed to Louisiana to assist in Hurricane Gustav recovery efforts, was "engaged in" emergency recovery efforts as a representative of Louisiana and was, therefore, entitled to immunity even though his unit had completed its work and was in the process of leaving Louisiana at the time of the accident. The court focused on the fact that at the time of the accident, Lanfair and his unit were in a national guard vehicle transporting supplies that were used in the hurricane relief effort, finding this activity fit squarely within "response to" and "recovery from emergencies or disasters." *Id*. at *5.

In this case, Mr. Worrell was driving a vehicle owned by the City of Wilson to transport him and his co-worker from Houma back to their hotel in Lafayette, due

4

to a hotel shortage in Houma.  The accident occurred after he exited Highway U.S. 90 in Morgan City.[4]

The reason why Mr. Wilson was exiting the highway remains unknown and a resolution of this issue hinges on the reason for exiting.  If Mr. Worrell was in a direct route back to the hotel, fueling, or on a work errand, I believe he was "engaged in" emergency preparedness and management activities.  However, if Mr. Worrell exited for purely personal reasons, such as entertainment, he would no longer fall within the definition.

For these reasons, I concur in the result.

---

[4] The facts as presented in the Certified Question state: "Upon exiting Highway U.S. 90 in Morgan City, Louisiana, Worrell collided with a vehicle driven by Edward Breaux and occupied by his wife, Linda Breaux, and their friends, co-plaintiffs Jessie and Vickie Blanchard."